# **EXHIBIT A**

DB1/ 88203362.1


Hemenway & Barnes LLP

Donna A. Mizrahi
Direct Dial (617) 557-9730
dmizrahi@hembar.com

75 State Street
16th Floor
Boston, MA 02109-1466
t 617 227 7940
f 617 227 0781
www.hembar.com

October 26, 2018

**Certified Mail**
**No. 7017 0660 0000 1090 7226**
**Return Receipt Requested**
Morgan Stanley Private Bank, N.A.
2000 Westchester Avenue
Purchase, NY 10577

Trustees

Counselors at Law

Re:   Feeney Brothers Excavation LLC and Feeney Brothers Excavation
      Corporation 401(k) Plan vs. Morgan Stanley & Co. LLC, et al
      Suffolk Superior Court, Docket No.:  1884CV03183D

Dear Sir/Madam:

Pursuant to the Massachusetts Long-Arm Statute, G.L. c. 223A, §6, please find enclosed a copy of the following documents in the above-captioned case:

1.   Summons;

2.   Complaint together with supporting Exhibit;

3.   Civil Action Cover Sheet; and

4.   Tracking Order.

Kindly provide your response to the Complaint pursuant to the Rules.

Very truly yours,

Donna A. Mizrahi

DAM/crs
Enclosures
cc:   M. Patrick Moore, Esq.

# 1083866v1

## Commonwealth of Massachusetts

SUFFOLK, SS.

TRIAL COURT OF THE COMMONWEALTH
SUPERIOR COURT DEPARTMENT
CIVIL DOCKET NO. 1884CV03183D

FEENEY BROTHERS EXCAVATION LLC
AND FEENEY BROTHERS
EXCAVATION CORPORATION , PLAINTIFF(S),
401(k) PLAN
V.

MORGAN STANLEY & CO. LLC, DEFENDANT(S)
MORGAN STANLEY PRIVATE BANK, N.A.
MORGAN STANLEY SMITH BARNEY LLC    SUMMONS
AND BRIAN F. MILLER

THIS SUMMONS IS DIRECTED TO MORGAN STANLEY PRIVATE BANK, N.A. (Defendant's name)

You are being sued. The Plaintiff(s) named above has started a lawsuit against you. A copy of the Plaintiff's Complaint filed against you is attached to this summons and the original complaint has been filed in the Suffolk Superior Court. **YOU MUST ACT PROMPTLY TO PROTECT YOUR RIGHTS.**

1. **You must respond to this lawsuit in writing within 20 days.** If you do not respond, the court may decide the case against you and award the Plaintiff everything asked for in the complaint. You will also lose the opportunity to tell your side of the story. You must respond to this lawsuit in writing even if you expect to resolve this matter with the Plaintiff. **If you need more time to respond, you may request an extension of time in writing from the Court.**

2. **How to Respond.** To respond to this lawsuit, you must file a written response with the court **and** mail a copy to the Plaintiff's Attorney (or the Plaintiff, if unrepresented). You can do this by:

   a. Filing your signed original response with the Clerk's Office for Civil Business, Suffolk Court, 3 Pemberton Sq. Boston, MA 02108 (address), by mail or in person, **AND**

   b. Delivering or mailing a copy of your response to the Plaintiff's Attorney/Plaintiff at the following Hemenway & Barnes address: 75 State St., Boston, MA 02109 .

3. **What to include in your response.** An "Answer" is one type of response to a Complaint. Your Answer must state whether you agree or disagree with the fact(s) alleged in each paragraph of the Complaint. Some defenses, called affirmative defenses, must be stated in your Answer or you may lose your right to use them in court. If you have any claims against the Plaintiff (referred to as **counterclaims**) that are based on the same facts or transaction described in the Complaint, then you must include those claims in your Answer. Otherwise, you may lose your right to sue the Plaintiff about anything related to this lawsuit. If you want to have your case heard by a jury, you must **specifically** request a jury trial in your Answer or in a written demand for a jury trial that you must send to the other side and file with the court no more than 10 days after sending your Answer. You can also respond to a Complaint by filing a **"Motion to Dismiss,"** if you believe that the complaint is legally invalid or legally insufficient. A Motion to Dismiss must be based on one of the legal deficiencies or reasons listed under **Mass. R. Civ. P. 12.** If you are filing a Motion to Dismiss, you must also comply with the filing procedures for "Civil Motions" described in the rules of the Court in which the complaint was filed, available at www.mass.gov.courts/case-legal-res/rules of court.

4.    Legal Assistance. You may wish to get legal help from a lawyer. If you cannot get legal help, some basic information for people who represent themselves is available at www.mass.gov/courts/selfhelp.

5.    Required information on all filings: The "civil docket number" appearing at the top of this notice is the case number assigned to this case and must appear on the front of your Answer or Motion to Dismiss. You should refer to yourself as the "Defendant."

Witness Hon. Judith Fabricant, Chief Justice on _____, 20_____.

*Michael Joseph Donovan*

Michael Joseph Donovan

Clerk-Magistrate

Note: The number assigned to the Complaint by the Clerk-Magistrate at the beginning of the lawsuit should be indicated on the summons before it is served on the Defendant.

## PROOF OF SERVICE OF PROCESS

I hereby certify that on _____, 20____, I served a copy of this summons, together with a copy of the complaint in this action, on the defendant named in this summons, in the following manner (See Mass. R. Civ. P. 4 (d)(1-5)):

_____

_____

_____

Dated: _____, 20____        Signature: _____

N.B.    TO PROCESS SERVER:

PLEASE ENTER THE DATE THAT YOU MADE SERVICE ON THE DEFENDANT IN THIS BOX — BOTH ON THE ORIGINAL SUMMONS AND ON THE COPY OF THE SUMMONS SERVED ON THE DEFENDANT.

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss

SUPERIOR COURT DEPARTMENT
CIVIL ACTION NO.

| | |
|---|---|
| FEENEY BROTHERS EXCAVATION LLC AND FEENEY BROTHERS EXCAVATION CORPORATION 401(k) PLAN<br><br>    Plaintiffs<br><br>v.<br><br>MORGAN STANLEY & CO. LLC, MORGAN STANLEY PRIVATE BANK, N.A., MORGAN STANLEY SMITH BARNEY LLC, AND BRIAN F. MILLER<br><br>    Defendants | |

## COMPLAINT

By this action, plaintiffs Feeney Brothers Excavation LLC ("Feeney Brothers") and the Feeney Brothers Excavation Corporation 401(k) Plan (the "Plan") seek damages from defendants Morgan Stanley & Co. LLC, Morgan Stanley Private Bank, N.A., Morgan Stanley Smith Barney LLC (collectively "Morgan Stanley") and Brian F. Miller ("Miller"), an investment adviser employed by Morgan Stanley, arising out of Miller's representations concerning Qualified Pension Services, Inc. ("QPSI") and his recommendation that Feeney Brothers hire QPSI to serve as the Plan's third-party administrator ("TPA").

Despite Miller's representations, QPSI was not qualified to serve as the Plan's TPA when it was hired, and it became even more ill-suited to serve as TPA as the number of Plan participants grew. In fact, QPSI made two significant errors in administering the Plan – discovered through audits in 2015 and 2016 – which Feeney Brothers and the Plan were required

1

to remedy. Feeney Brothers and the Plan have sustained more than $1 million in losses in total to pay additional Plan contributions required by the IRS, as well as attorneys' fees, in-house staff time, successor TPA fees, accountant fees, and IRS fees to address the errors. These damages were the result of Miller's recommendation to hire QPSI, and the negligent misrepresentations he made in connection with that recommendation, which resulted in Feeney Brothers being fraudulently induced to enter a contract with Miller and Morgan Stanley. Miller's conduct also breached the covenant of good faith and fair dealing and failed to comport with the prohibition on unfair and deceptive trade practices established by Chapter 93A.

## PARTIES

1.    Plaintiff Feeney Brothers is a limited liability company organized under the laws of the Commonwealth of Massachusetts and having a principal place of business of 103 Clayton Street, Dorchester, MA 02122.

2.    Plaintiff the Plan is the 401(k) plan provided to Feeney Brothers employees. The Plan is administered at Feeney Brothers' principal place of business, 103 Clayton Street, Dorchester, MA 02122.

3.    Defendant Morgan Stanley & Co. LLC is a limited liability company organized under the laws of the state of Delaware with its principal place of business located at 1585 Broadway Avenue, New York, NY 10036. In Massachusetts, Morgan Stanley & Co. LLC's principal place of business is 1 International Place, 13th Floor, Boston, MA 02110.

4.    Defendant Morgan Stanley Smith Barney LLC is a limited liability company organized under the laws of the state of Delaware with its principal place of business located at 1585 Broadway Avenue, New York, NY 10036. Morgan Stanley Smith Barney LLC is registered to do business in the Commonwealth of Massachusetts.

5.      Defendant Morgan Stanley Private Bank, N.A. is a national bank with its principal place of business at 2000 Westchester Avenue, Purchase, NY, 10577.  Morgan Stanley Private Bank, N.A. is listed as Defendant Miller's current employer, with a branch office location located at 53 State Street, Boston, MA 02109.  *See* Exhibit 1 (SEC Investment Adviser Representative Public Disclosure Report of Brian Francis Miller).

6.      Defendant Morgan Stanley & Co. LLC, Defendant Morgan Stanley Smith Barney LLC, and Defendant Morgan Stanley Private Bank, N.A., including predecessor entities of each of the foregoing, will be referenced collectively as "Morgan Stanley."

7.      Defendant Brian F. Miller ("Miller") is an individual employed by or otherwise affiliated with Morgan Stanley as a First Vice President, Financial Advisor, & Corporate Retirement Director.  More specifically, according to the SEC Investment Adviser Representative Public Disclosure Report of Brian Francis Miller, Miller worked at Morgan Stanley Smith Barney LLC beginning in June 2009, and Morgan Stanley Private Bank, N.A. beginning in 2015.  He continues to be employed by Morgan Stanley, and his current business address is 53 State Street, Boston, MA  02109.  *See* Exhibit 1 (SEC Investment Adviser Representative Public Disclosure Report of Brian Francis Miller).  According to Miller's publicly available biography, he has worked for or been affiliated with Morgan Stanley (or a predecessor entity) since 1987.

## FACTS

### Background

8.      Feeney Brothers was founded by two brothers in 1988 as a utility construction company and today is a leading service provider for the natural gas, electric, and telecommunications industries throughout New England.

3

9.      The Plan is the 401(k) plan Feeney Brothers offers its employees for retirement savings.

10.     Morgan Stanley is a multinational investment bank and financial services company. Among other business lines, Morgan Stanley provides investment advice to individual clients (including Plaintiffs). For the second quarter ending June 30, 2018, Morgan Stanley earned over $10.6 billion in net revenue, reflecting $691 million in net revenue for its investment management services, with $474 billion assets under management.

11.     Miller, who has been employed by Morgan Stanley since 1987, works as a First Vice President, Financial Advisor, and Corporate Retirement Director at Morgan Stanley.

12.     In or about 2009, the Plan retained Miller (and Morgan Stanley) as its investment advisor.

13.     At or near the same time, Feeney Brothers and the Plan also retained QPSI as the Plan's third-party administrator ("TPA"), based on Miller's recommendation that it do so.

14.     In discussions with Feeney Brothers, Miller stressed his expertise in assisting 401(k) plans — not just by providing investment advice, but also by ensuring that the Plan's administrative and regulatory needs were met by capable TPAs. In that context, Miller represented to Feeney Brothers that QPSI had the aptitude, ability, and expertise to administer the Plan. Miller expressly recommended that, on the basis of his representations concerning QPSI's representations, Feeney Brothers and the Plan retain QPSI as the Plan's TPA.

15.     QPSI was the only TPA about which Miller made such a representation and it was the only TPA Miller advised Feeney Brothers to hire.

4

16.    In recommending Plaintiffs hire QPSI as the Plan's TPA and making representations in connection with that recommendation, Miller was acting within the scope of his employment at Morgan Stanley.

17.    At the time Feeney Brothers retained QPSI, it maintained a relatively small finance department with limited experience in 401(k) plan administration.  Miller knew this fact, and marketed his services with it in mind:  as someone capable of meeting all needs arising from the Plan, either personally or through recommendations to what he purported to be qualified third-parties.

18.    In reliance upon Miller's expertise and advice, Feeney Brothers hired QPSI as the Plan's TPA.

19.    QPSI, however, was not qualified to be the Plan's TPA.  QPSI's business focused exclusively on the administration of small 401(k) plans, and QPSI was not equipped to handle the mid-sized and growing Plan.

20.    Miller knew or should have known that QPSI was not equipped to serve as Feeney Brother's TPA because, among other things, the Plan was larger than most plans administered by QPSI; QPSI lacked the aptitude, qualifications and experience to meet the Plan's needs; and those needs would grow only more complex and demanding as the Plan grew, rendering QPSI even more poorly suited for the TPA role.

21.    Instead Miller represented to Feeney Brothers and the Plan that QPSI ably provided services to other 401(k) plans with which Miller worked.  Miller did not mention, however, that those plans were quite small, with needs far different than those of the Plan.

22.    Miller also represented to Feeney Brothers and the Plan that Miller knew and trusted QPSI's principal, Richard "Dick" Etling; Miller did not disclose, however, that Etling's business model focused exclusively on plans much smaller than the Plan.

23.    Moreover, and perhaps reflective of its small-plan client base, QPSI carried no insurance to protect it against losses caused by its failure to perform its duties as a TPA, a fact which Miller knew or at a minimum should have known, but which was not disclosed to Feeney Brothers.

24.    When Miller pitched Feeney Brothers to hire him and Morgan Stanley to become the investment advisor to the Plan, Miller did so as part of a package.  He estimated the cost of his investment advisory services together with other administrative services (i.e., those of QPSI and those of the platform through which the Plan would be administered), and presented everything packaged into one price.  QPSI's TPA services were relatively low cost, making Miller's pitch to become the investment advisor to the Plan more attractive.

25.    Over recent years, as Feeney Brothers grew, so too did the number of Plan participants.  Miller and Morgan Stanley knew these facts well because, as investment advisor to the Plan, Miller and Morgan Stanley benefited from them in the form of ever-increasing fees.

26.    But as the Plan grew in size, QPSI became even less qualified to serve as its TPA.  Of QPSI's approximately 300 clients, the Plan was its largest — by far.

27.    In fact, of QPSI's 300 clients, no more than a handful were 401(k) plans with more than 20 participants; in recent years, the Plan has had substantially more than 100 participants.

28.     In addition, QPSI provided TPA services exclusively to 401(k) plans that were not "large plans," i.e., those that were below the 100-participant threshold that under federal regulations triggers an annual public accounting audit of the Plan.

29.     For several years before 2014, the Plan neared the 100-participant threshold (as defined in federal regulations), and in 2014, the Plan crossed that threshold.  QPSI had no experience with administering a plan of that size and so notified Miller.

30.     Though Miller was aware of QPSI's unsuitability to administer the Plan, Miller did not share that information with Plaintiffs and instead continued to recommend QPSI and package QPSI's services with Miller's own.

### Losses Incurred by the Plan & Feeney Brothers

31.     Feeney Brothers became aware of QPSI's inability to meet reasonable standards of professional diligence only following audits of the Plan completed in mid-October 2015 and mid-October 2016, respectively.

32.     The 2015 audit determined that an error had occurred when QPSI used its template documents to restate the Plan.  Feeney Brothers had approved QPSI's request to use its template documents under one condition:  that they not alter any material provision of the Plan (including without limitation that bonus compensation not fall within the Plan's definition of "compensation").

33.     Under the Plan as it existed before QPSI's use of its template documents, if Plan participants wanted to include cash bonuses in "compensation" for purposes of elective deferrals and matching contributions, they were required to make an affirmative election to do so.  QPSI's restatement of the plan, however, included bonuses in "compensation," whether or not a Plan participant affirmatively elected to include bonuses.

7

34.     QPSI did not inform Feeney Brothers of the resulting change to the Plan document, leaving the company unaware that it had occurred.

35.     Upon discovering the error in October 2015, Feeney Brothers immediately began operating the Plan in compliance with the terms as QPSI had restated them (i.e., by calculating elective deferrals and matching contributions using a definition of "compensation" that includes bonuses). In addition, Feeney Brothers incurred substantial legal fees to file an application to the IRS's Voluntary Correction Program to address and resolve the issue.

36.     The 2016 audit identified erroneous guidance provided to Feeney Brothers with respect to profit-sharing contributions to the Plan. Federal rules require nondiscrimination between highly compensated employees ("HCEs") and non-highly compensated employees ("NHCEs") in connection with profit sharing contributions. In 2010, based on guidance provided by QPSI, Feeney Brothers amended the Plan to alter its profit sharing contributions. QPSI committed to perform the nondiscrimination tests associated with the altered contributions.

37.     However, the 2016 audit uncovered that the Plan amendments designed by QPSI and the nondiscrimination tests administered by it were defective and inconsistent with federal nondiscrimination rules. To remedy this issue, Feeney Brothers again had to apply to the IRS's Voluntary Correction Program.

38.     All told, Miller's recommendation to hire QPSI and QPSI's substandard performance caused Feeney Brothers to incur the following damages: $676,950 in additional Plan contributions required by the IRS; more than $175,000 in attorneys' fees to remedy Plan defects and work with the IRS to achieve compliance through the Voluntary Correction Program; approximately $100,000 in Feeney Brothers in-house staff time to prepare the Voluntary Correction Program submission and remedy Plan defects; $50,845 in successor TPA fees for

8

time devoted to remedying the Plan defects; $12,000 to accountants to identify and address the Plan defects; and $7,500 in fees to the IRS for participation in the Voluntary Correction Program. In sum, Feeney Brothers and the Plan have sustained more than $1 million in losses.

## COUNT I
### Negligent Misrepresentation

39.    Plaintiffs repeat and reallege the allegations of Paragraphs 1 through 38 as if fully set forth herein.

40.    At the time Miller and Morgan Stanley were hired to provide investment advice to the Plan, Miller made inaccurate representations concerning QPSI, its aptitude and expertise, and its suitability to provide TPA services to the Plan.

41.    In making those representations, Miller held himself out as an expert, and invited Feeney Brothers — which, at the time, had a small finance department, and limited 401(k)-related experience — to rely upon Miller's expertise. Miller advised Feeney Brothers and the Plan to retain QPSI and only QPSI.

42.    In reasonable reliance on Miller's expertise, representations, and recommendation, Feeney Brothers and the Plan then retained QPSI.

43.    In the years that followed, QPSI's unsuitability as a TPA for the Plan increased as the number of participants in the Plan grew.

44.    Nevertheless, Miller praised the work of QPSI, continued to recommend its services, and never raised any concerns regarding its ability to administer a growing Plan.

45.    But for Miller's representations and advice, neither Feeney Brothers nor the Plan would have retained QPSI; nor would either entity have believed that QPSI had the professional capacity to do the work for which it was hired.

9

46.     Feeney Brothers and the Plan were damaged as a direct and proximate result of Miller's negligent misrepresentations as described herein.

## COUNT II
## Fraudulent Inducement

47.     Plaintiffs repeat and reallege the allegations of Paragraphs 1 through 46 as if fully set forth herein.

48.     When Miller pitched Feeney Brothers and the Plan to hire him and Morgan Stanley as investment advisor to the Plan, Miller presented his services as part of a package with those of QPSI and those of the platform provider.

49.     In so doing, Miller provided an estimated total cost for annual services. That cost was artificially low, because Miller had recommended a TPA on the basis of cost rather than qualifications, aptitude, and ability.

50.     Miller knew or should have known that QPSI was not qualified to serve as the Plan's TPA.

51.     Relying on Miller's expertise and representations regarding QPSI's aptitude, Feeney Brothers and the Plan retained Miller's and Morgan Stanley's services and those of QPSI as part of the package that Miller had presented.

52.     Accordingly, Miller made material misrepresentations, which benefited Miller and Morgan Stanley in the form of investment advisory fees, but which did not benefit the Plan (as it was left with an unsuitable TPA).

53.     As a direct and proximate result of these representations by Miller (made within the scope of his employment at Morgan Stanley), Plaintiffs have suffered damages as described herein.

10

## COUNT III
### Breach of the Covenant of Good Faith and Fair Dealing

54.   Plaintiffs repeat and reallege the allegations of Paragraphs 1 through 53 as if fully set forth herein.

55.   Feeney Brothers and the Plan contracted with Miller and Morgan Stanley to provide investment advisory services to support the Plan and its participants.

56.   In every contract, there is an implied covenant that the parties shall act in good faith, deal fairly with one another, and not undertake efforts that would deprive the other of the benefits of their contract.

57.   At all times, Plaintiffs acted in good faith and dealt fairly with Defendants in connection with their rights and obligations pursuant to the parties' contract.

58.   Defendants, however, did not act in good faith or deal fairly with Plaintiffs.

59.   Miller knew that QPSI was providing administrative services that it was ill-equipped to provide, thereby potentially damaging the Plan and compromising its assets.

60.   Miller also knew, or at a minimum should have known, that QPSI did not carry insurance to cover any losses caused by its failure to perform its duties as a TPA.

61.   Miller did not raise these concerns; nor did Miller share his knowledge that QPSI typically works with much smaller clients.

62.   When comprehensive audits were undertaken in 2015 and 2016, they uncovered the considerable consequences of QPSI's inaptitude.

63.   As a result of Defendants' bad faith and unfair dealing, Defendants benefitted from this contract, receiving investment advisory fees, but deprived Plaintiffs of the benefits they were entitled to receive under the parties' contract.

64.     As a direct and proximate result of Defendants' breaches of the implied covenant of good faith and fair dealing, Plaintiffs have suffered damages as described herein.

## COUNT IV
### Violation of G.L. c. 93A

65.     Plaintiffs repeat and reallege the allegations of Paragraphs 1 through 64 as if fully set forth herein.

66.     Plaintiffs and Defendants are each engaged in the conduct of trade and commerce within the meaning of G.L. c. 93A, §1(b).

67.     The above-described conduct of Defendants constitutes unfair and deceptive acts and practices in the conduct of trade or commerce, in violation of G.L. c. 93A, §§ 2 and 11.

68.     The above-described conduct of Defendants occurred primarily and substantially within the Commonwealth of Massachusetts.

69.     As a result of Defendants' wrongful acts and conduct, Plaintiffs have suffered substantial losses as described herein.

70.     Defendants' violations of G.L. c. 93A were willful and/or knowing, and Defendants are therefore liable to Plaintiffs for treble damages, in accordance with G.L. c. 93A, §§ 2 and 11.

71.     Plaintiffs are also entitled to an award of reasonable attorneys' fees and costs incurred in this action as a result of Defendants' violations of G.L. c. 93A, § 2.

12

WHEREFORE, Plaintiffs respectfully ask this Court to:

1. Enter judgment for Plaintiffs on all counts of this Complaint;

2. Award monetary damages to Plaintiffs in an amount to be proved at trial;

3. Award treble damages to Plaintiffs, as provided by G.L. c. 93A, § 11, for Defendants' violation of G.L. c. 93A, §2;

4. Award Plaintiffs their costs and attorneys' fees; and

5. Award such further relief as the Court deems just and proper.

## JURY DEMAND

PLAINTIFFS DEMAND A TRIAL BY JURY ON ALL COUNTS SO TRIABLE.

Respectfully submitted,

FEENEY BROTHERS EXCAVATION
LLC AND THE FEENEY BROTHERS
EXCAVATION CORPORATION 401(k)
PLAN

By its Attorneys,

*Donna A. Mizrahi*

Michael Patrick Moore, Jr., BBO# 670323
Donna A. Mizrahi, Esq., BBO# 678412
HEMENWAY & BARNES LLP
75 State Street
Boston, Massachusetts 02109
(617) 227-7940

Dated:    October 12, 2018

13

# EXHIBIT 1



User Guidance

www.adviserinfo.sec.gov

**Investment Adviser Representative Public Disclosure Report**

# BRIAN FRANCIS MILLER

CRD# 1721961

Report #49128-72070, data current as of Thursday, October 11, 2018.

| Section Title | Page(s) |
| --- | --- |
| Report Summary | 1 |
| Qualifications | 2 - 3 |
| Registration and Employment History | 4 |



www.adviserinfo.sec.gov

**IAPD Information about Investment Adviser Representatives**

IAPD offers information on all current-and many former-Investment Adviser Representatives. Investors are strongly encouraged to use IAPD to check the background of Investment Adviser Representatives before deciding to conduct, or continue to conduct, business with them.

- **What is included in a IAPD report?**
- IAPD reports for individual Investment Adviser Representatives include information such as employment history, professional qualifications, disciplinary actions, criminal convictions, civil judgments and arbitration awards.

- It is important to note that the information contained in an IAPD report may include pending actions or allegations that may be contested, unresolved or unproven. In the end, these actions or allegations may be resolved in favor of the Investment Adviser Representative, or concluded through a negotiated settlement with no admission or finding of wrongdoing.

- **Where did this information come from?**
- The information contained in IAPD comes from the Investment Adviser Registration Depository (IARD) and FINRA's Central Registration Depository, or CRD®, (see more on CRD below) and is a combination of:

    o information the states require Investment Adviser Representatives and firms to submit as part of the registration and licensing process, and
    o information that state regulators report regarding disciplinary actions or allegations against Investment Adviser Representatives.
    o

- **How current is this information?**
- Generally, Investment Adviser Representatives are required to update their professional and disciplinary information in IARD within 30 days.

- **Need help interpreting this report?**
- For help understanding how to read this report, please consult NASAA's IAPD Tips page http://www.nasaa.org/IAPD/IARReports.cfm.

- **What if I want to check the background of an Individual Broker or Brokerage firm?**
- To check the background of an Individual Broker or Brokerage firm, you can search for the firm or individual in IAPD. If your search is successful, click on the link provided to view the available licensing and registration information in FINRA's BrokerCheck website.

- **Are there other resources I can use to check the background of investment professionals?**
- It is recommended that you learn as much as possible about an individual Investment Adviser Representative or Investment Adviser firm before deciding to work with them. Your state securities regulator can help you research individuals and certain firms doing business in your state. The contact information for state securities regulators can be found on the website of the North American Securities Administrators Association http://www.nasaa.org.



www.adviserinfo.sec.gov

## Investment Adviser Representative Report Summary

### BRIAN FRANCIS MILLER (CRD# 1721961)

The report summary provides an overview of the Investment Adviser Representative's professional background and conduct. The information contained in this report has been provided by the Investment Adviser Representative, investment adviser and/or securities firms, and/or securities regulators as part of the states' investment adviser registration and licensing process. The information contained in this report was last updated by the Investment Adviser Representative, a previous employing firm, or a securities regulator on **08/02/2018**.

## CURRENT EMPLOYERS

**MORGAN STANLEY**
IARD# 149777
53 STATE STREET
BOSTON, MA 02109
Registered with this firm since: 07/05/2018

## QUALIFICATIONS

This Investment Adviser Representative is currently registered in **1** jurisdiction(s).

Is this Investment Adviser Representative currently suspended with any jurisdiction? **No**

**Note:** Not all jurisdictions require IAR registration or may have an exemption from registration.
Additional information including this individual's qualification examinations and professional designations is available in the Detailed Report.

## REGISTRATION HISTORY

This Investment Adviser Representative was previously registered with the following Investment Adviser firms:
No information reported.

For additional registration and employment history details as reported by the individual, refer to the Registration and Employment History section of the Detailed Report.

## DISCLOSURE INFORMATION

Disclosure events include certain criminal charges and convictions, formal investigations and disciplinary actions initiated by regulators, customer disputes and arbitrations, and financial disclosures such as bankruptcies and unpaid judgments or liens.

Are there events disclosed about this Investment Adviser Representative?    **No**

©2018 FINRA. All rights reserved. Report# 49128-72070 requested on Thursday, October 11, 2018 about BRIAN FRANCIS MILLER.



# Investment Adviser Representative Qualifications

## REGISTRATIONS

This section provides the states and U.S. territories in which the Investment Adviser Representative is currently registered and licensed, the category of each registration, and the date on which the registration became effective. This section also provides, for each firm with which the Investment Adviser Representative is currently employed, the address of each location where the Investment Adviser Representative works.

This individual is currently registered with **1** jurisdiction(s) through his or her employer(s).

## Employment 1 of 1

| | |
|---|---|
| Firm Name: | **MORGAN STANLEY** |
| Main Address: | 2000 WESTCHESTER AVENUE<br>PURCHASE, NY  10577-2530 |
| Firm IARD#: | 149777 |

| U.S. State/ Territory | Status | Date |
|---|---|---|
| Connecticut | Approved | 07/05/2018 |

## Branch Office Locations

**MORGAN STANLEY**
53 STATE STREET
BOSTON, MA  02109

©2018 FINRA. All rights reserved. Report# 49128-72070 requested on Thursday, October 11, 2018 about BRIAN FRANCIS MILLER.



## Investment Adviser Representative Qualifications

## PASSED INDUSTRY EXAMS

This section includes all required state securities exams that the Investment Adviser Representative has passed. Under limited circumstances, an Investment Adviser Representative may attain registration after receiving an exam waiver based on a combination of exams the Investment Adviser Representative has passed and qualifying work experience. Likewise, a new exam requirement may be grandfathered based on an Investment Adviser Representative's specific qualifying work experience. Exam waivers and grandfathering are not included below.

This individual has passed the following exams:

| Exam | Category | Date |
|---|---|---|
| Uniform Securities Agent State Law Examination (S63) | Series 63 | 10/19/1987 |
| Uniform Combined State Law Examination (S66) | Series 66 | 07/05/2018 |

## PROFESSIONAL DESIGNATIONS

This section details that the Investment Adviser Representative has reported **0** professional designation(s).

No information reported.

©2018 FINRA. All rights reserved. Report# 49128-72070 requested on Thursday, October 11, 2018 about BRIAN FRANCIS MILLER.



## Investment Adviser Representative Registration and Employment History

## PREVIOUSLY REGISTERED WITH THE FOLLOWING INVESTMENT ADVISER FIRMS

This section indicates that state registration records show this Investment Adviser Representative previously held registrations with the following firms:

No information reported.

## EMPLOYMENT HISTORY

Below is the Investment Adviser Representative's employment history for up to the last 10 years.

Please note that the Investment Adviser Representative is required to provide this information only while registered and the information is not updated after the Investment Adviser Representative ceases to be registered, with a state regulator. Therefore, an employment end date of "Present" may not reflect the Investment Adviser Representative's current employment status.

| Employment Dates | Employer Name | Employer Location |
|---|---|---|
| 01/2015 - Present | MORGAN STANLEY PRIVATE BANK, NATIONAL ASSOCIATION | NEW YORK, NY |
| 06/2009 - Present | MORGAN STANLEY SMITH BARNEY | BOSTON, MA |
| 11/2005 - Present | CITIGROUP GLOBAL MARKETS INC. | BOSTON, MA |

## OTHER BUSINESS ACTIVITIES

This section includes information, if any, as provided by the Investment Adviser Representative regarding other business activities the Investment Adviser Representative is currently engaged in either as a proprietor, partner, officer, director, employee, trustee, agent, or otherwise. This section does not include non-investment related activity that is exclusively charitable, civic, religious, or fraternal and is recognized as tax exempt.

No information reported.



User Guidance

www.adviserinfo.sec.gov

## End of Report

This page is intentionally left blank.

©2018 FINRA. All rights reserved. Report# 49128-72070 requested on Thursday, October 11, 2018 about BRIAN FRANCIS MILLER.

| CIVIL ACTION COVER SHEET | DOCKET NUMBER | Trial Court of Massachusetts The Superior Court |
|---|---|---|

| PLAINTIFF(S): | Feeney Brothers Excavation LLC | COUNTY |
|---|---|---|
| ADDRESS: | and Feeney Brothers Excavation Corporation 401(k) Plan | Suffolk |

DEFENDANT(S): Morgan Stanley & Co., LLC, Morgan Stanley Private Bank, N.A., Morgan Stanley Smith Barney LLC and Brian F. Miller

ATTORNEY: M. Patrick Moore, Esq./Donna A. Mizrahi, Esq.
ADDRESS: Hemenway & Barnes LLP, 75 State Street
Boston, MA 02109

ADDRESS:

BBO: 670323/678412

### TYPE OF ACTION AND TRACK DESIGNATION (see reverse side)

CODE NO. ~~A99~~/B99

TYPE OF ACTION (specify) ~~Contract/Business Action/~~Tortious Action

TRACK F

HAS A JURY CLAIM BEEN MADE? [X] YES [ ] NO

*If "Other" please describe: Negligent misrepresentation; fraudulent inducement; G.L. c. 93A

### STATEMENT OF DAMAGES PURSUANT TO G.L. c. 212, § 3A

The following is a full, itemized and detailed statement of the facts on which the undersigned plaintiff or plaintiff counsel relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

#### TORT CLAIMS
(attach additional sheets as necessary)

A. Documented medical expenses to date:
1. Total hospital expenses .................. $
2. Total doctor expenses .................. $
3. Total chiropractic expenses .................. $
4. Total physical therapy expenses .................. $
5. Total other expenses (describe below) .................. $
Subtotal (A): $

B. Documented lost wages and compensation to date .................. $
C. Documented property damages to dated .................. $
D. Reasonably anticipated future medical and hospital expenses .................. $
E. Reasonably anticipated lost wages .................. $
F. Other documented items of damages (describe below) .................. $

G. Briefly describe plaintiff's injury, including the nature and extent of injury:

TOTAL (A-F):$

#### CONTRACT CLAIMS
(attach additional sheets as necessary)

Provide a detailed description of claims(s):

Contract/Tort Combined TOTAL: $ 1 Million+

Signature of Attorney/Pro Se Plaintiff: X _Donna A. Mizrahi_ Date: 10/12/2018

RELATED ACTIONS: Please provide the case number, case name, and county of any related actions pending in the Superior Court.

### CERTIFICATION PURSUANT TO SJC RULE 1:18

I hereby certify that I have complied with requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods of dispute resolution.

Signature of Attorney of Record: X _Donna A. Mizrahi_ Date: 10/12/2018

| CIVIL TRACKING ORDER<br>(STANDING ORDER 1- 88) | DOCKET NUMBER<br>1884CV03183 | Trial Court of Massachusetts<br>The Superior Court |
|---|---|---|
| CASE NAME:<br>Feeney Brothers Excavation LLC et al vs. Morgan Stanley & Co LLC et al | | Michael Joseph Donovan, Clerk of Court |
| TO:<br><br>, | | COURT NAME & ADDRESS<br>Suffolk County Superior Court - Civil<br>Suffolk County Courthouse, 12th Floor<br>Three Pemberton Square<br>Boston, MA 02108 |

### TRACKING ORDER - F - Fast Track

You are hereby notified that this case is on the track referenced above as per Superior Court Standing Order 1-88. The order requires that the various stages of litigation described below must be completed not later than the deadlines indicated.

| STAGES OF LITIGATION | DEADLINE | | |
|---|---|---|---|
| | SERVED BY | FILED BY | HEARD BY |
| Service of process made and return filed with the Court | | 01/10/2019 | |
| Response to the complaint filed (also see MRCP 12) | | 02/11/2019 | |
| All motions under MRCP 12, 19, and 20 | 02/11/2019 | 03/11/2019 | 04/10/2019 |
| All motions under MRCP 15 | 02/11/2019 | 03/11/2019 | 04/10/2019 |
| All discovery requests **and depositions** served and non-expert depositions completed | 08/08/2019 | | |
| All motions under MRCP 56 | 09/09/2019 | 10/07/2019 | |
| Final pre-trial conference held and/or firm trial date set | | | 02/04/2020 |
| Case shall be resolved and judgment shall issue by | | | 10/12/2020 |

The final pre-trial deadline is <u>not the scheduled date of the conference</u>. You will be notified of that date at a later time.

**Counsel for plaintiff must serve this tracking order on defendant before the deadline for filing return of service.**

This case is assigned to

| DATE ISSUED | ASSISTANT CLERK | PHONE |
|---|---|---|
| 10/12/2018 | Jane M Mahon | (617)788-8110 |

Date/Time Printed: 10-12-2018 12:24:37                                        SCV025\ 08/2018



$008.0

02 1P
0000867268    OCT 26 2018
MAILED FROM ZIP CODE 02109

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT
OF THE RETURN ADDRESS. FOLD AT DOTTED LINE

CERTIFIED MAIL

7017 0660 0000 1090 7226





Hemenway
& Barnes LLP

75 State Street
16th Floor
Boston, MA 02109-1466

Morgan Stanley Private Bank, N.A.
2000 Westchester Avenue
Purchase, NY 10577

## Commonwealth of Massachusetts

SUFFOLK, SS.

FEENEY BROTHERS EXCAVATION LLC
AND FEENEY BROTHERS EXCAVATION
CORPORATION 401(k) PLAN , PLAINTIFF(S),

v.

MORGAN STANLEY & CO. LLC,
~~MORGAN~~ ~~STANLEY~~ ~~PRIVATE~~ DEFENDANT(S)
BANK, N.A., MORGAN STANLEY SMITH
BARNEY LLC AND BRIAN F. MILLER    SUMMONS

TRIAL COURT OF THE COMMONWEALTH
SUPERIOR COURT DEPARTMENT
CIVIL DOCKET NO. 1884CV03183D

THIS SUMMONS IS DIRECTED TO ____BRIAN F. MILLER____ . (Defendant's name)

You are being sued. The Plaintiff(s) named above has started a lawsuit against you. A copy of the Plaintiff's Complaint filed against you is attached to this summons and the original complaint has been filed in the SUFFOLK SUPERIOR    Court. YOU MUST ACT PROMPTLY TO PROTECT YOUR RIGHTS.

1. **You must respond to this lawsuit in writing within 20 days.** If you do not respond, the court may decide the case against you and award the Plaintiff everything asked for in the complaint. You will also lose the opportunity to tell your side of the story. You must respond to this lawsuit in writing even if you expect to resolve this matter with the Plaintiff. **If you need more time to respond, you may request an extension of time in writing from the Court.**

2. How to Respond. To respond to this lawsuit, you must file a written response with the court <u>and</u> mail a copy to the Plaintiff's Attorney (or the Plaintiff, if unrepresented). You can do this by:

   a. Filing your signed original response with the Clerk's Office for Civil Business, SUFFOLK    Court, 3 Pemberton Sq. Boston, MA 02108 (address), by mail or in person, **AND**

   b. Delivering or mailing a copy of your response to the Plaintiff's Attorney/Plaintiff at the following Hemenway & Barnes address: 75 State Street, Boston, MA 02109 .

3. What to include in your response. An "Answer" is one type of response to a Complaint. Your Answer must state whether you agree or disagree with the fact(s) alleged in each paragraph of the Complaint. Some defenses, called affirmative defenses, must be stated in your Answer or you may lose your right to use them in court. If you have any claims against the Plaintiff (referred to as **counterclaims**) that are based on the same facts or transaction described in the Complaint, then you must include those claims in your Answer. Otherwise, you may lose your right to sue the Plaintiff about anything related to this lawsuit. If you want to have your case heard by a jury, you must **specifically** request a jury trial in your Answer or in a written demand for a jury trial that you must send to the other side and file with the court no more than 10 days after sending your Answer. You can also respond to a Complaint by filing a "Motion to Dismiss," if you believe that the complaint is legally invalid or legally insufficient. A Motion to Dismiss must be based on one of the legal deficiencies or reasons listed under **Mass. R. Civ. P. 12.** If you are filing a Motion to Dismiss, you must also comply with the filing procedures for "Civil Motions" described in the rules of the Court in which the complaint was filed, available at www.mass.gov.courts/case-legal-res/rules of court.

A true copy Attest: *Joseph P Casey*

Deputy Sheriff Suffolk County

11-1-18

4. **Legal Assistance.** You may wish to get legal help from a lawyer. If you cannot get legal help, some basic information for people who represent themselves is available at www.mass.gov/courts/selfhelp.

5. **Required information on all filings:** The "civil docket number" appearing at the top of this notice is the case number assigned to this case and must appear on the front of your Answer or Motion to Dismiss. You should refer to yourself as the "Defendant."

Witness Hon. Judith Fabricant, Chief Justice on _____, 20_____.

*Michael Joseph Donovan*

Michael Joseph Donovan

Clerk-Magistrate

Note: The number assigned to the Complaint by the Clerk-Magistrate at the beginning of the lawsuit should be indicated on the summons before it is served on the Defendant.

## PROOF OF SERVICE OF PROCESS

I hereby certify that on _____, 20___, I served a copy of this summons, together with a copy of the complaint in this action, on the defendant named in this summons, in the following manner (See Mass. R. Civ. P. 4 (d)(1-5)):

_____

_____

_____

Dated: _____, 20___       Signature: _____

N.B.   TO PROCESS SERVER:

PLEASE ENTER THE DATE THAT YOU MADE SERVICE ON THE DEFENDANT IN THIS BOX – BOTH ON THE ORIGINAL SUMMONS AND ON THE COPY OF THE SUMMONS SERVED ON THE DEFENDANT.

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss                                   SUPERIOR COURT DEPARTMENT
                                              CIVIL ACTION NO.

| | |
|---|---|
| FEENEY BROTHERS EXCAVATION LLC AND FEENEY BROTHERS EXCAVATION CORPORATION 401(k) PLAN<br><br>    Plaintiffs<br><br>v.<br><br>MORGAN STANLEY & CO. LLC, MORGAN STANLEY PRIVATE BANK, N.A., MORGAN STANLEY SMITH BARNEY LLC, AND BRIAN F. MILLER<br><br>    Defendants | |

## COMPLAINT

By this action, plaintiffs Feeney Brothers Excavation LLC ("Feeney Brothers") and the Feeney Brothers Excavation Corporation 401(k) Plan (the "Plan") seek damages from defendants Morgan Stanley & Co. LLC, Morgan Stanley Private Bank, N.A., Morgan Stanley Smith Barney LLC (collectively "Morgan Stanley") and Brian F. Miller ("Miller"), an investment adviser employed by Morgan Stanley, arising out of Miller's representations concerning Qualified Pension Services, Inc. ("QPSI") and his recommendation that Feeney Brothers hire QPSI to serve as the Plan's third-party administrator ("TPA").

Despite Miller's representations, QPSI was not qualified to serve as the Plan's TPA when it was hired, and it became even more ill-suited to serve as TPA as the number of Plan participants grew. In fact, QPSI made two significant errors in administering the Plan – discovered through audits in 2015 and 2016 – which Feeney Brothers and the Plan were required

1

to remedy. Feeney Brothers and the Plan have sustained more than $1 million in losses in total to pay additional Plan contributions required by the IRS, as well as attorneys' fees, in-house staff time, successor TPA fees, accountant fees, and IRS fees to address the errors. These damages were the result of Miller's recommendation to hire QPSI, and the negligent misrepresentations he made in connection with that recommendation, which resulted in Feeney Brothers being fraudulently induced to enter a contract with Miller and Morgan Stanley. Miller's conduct also breached the covenant of good faith and fair dealing and failed to comport with the prohibition on unfair and deceptive trade practices established by Chapter 93A.

## PARTIES

1.   Plaintiff Feeney Brothers is a limited liability company organized under the laws of the Commonwealth of Massachusetts and having a principal place of business of 103 Clayton Street, Dorchester, MA 02122.

2.   Plaintiff the Plan is the 401(k) plan provided to Feeney Brothers employees. The Plan is administered at Feeney Brothers' principal place of business, 103 Clayton Street, Dorchester, MA 02122.

3.   Defendant Morgan Stanley & Co. LLC is a limited liability company organized under the laws of the state of Delaware with its principal place of business located at 1585 Broadway Avenue, New York, NY 10036. In Massachusetts, Morgan Stanley & Co. LLC's principal place of business is 1 International Place, 13th Floor, Boston, MA 02110.

4.   Defendant Morgan Stanley Smith Barney LLC is a limited liability company organized under the laws of the state of Delaware with its principal place of business located at 1585 Broadway Avenue, New York, NY 10036. Morgan Stanley Smith Barney LLC is registered to do business in the Commonwealth of Massachusetts.

2

5.      Defendant Morgan Stanley Private Bank, N.A. is a national bank with its principal place of business at 2000 Westchester Avenue, Purchase, NY, 10577.  Morgan Stanley Private Bank, N.A. is listed as Defendant Miller's current employer, with a branch office location located at 53 State Street, Boston, MA 02109.  *See* Exhibit 1 (SEC Investment Adviser Representative Public Disclosure Report of Brian Francis Miller).

6.      Defendant Morgan Stanley & Co. LLC, Defendant Morgan Stanley Smith Barney LLC, and Defendant Morgan Stanley Private Bank, N.A., including predecessor entities of each of the foregoing, will be referenced collectively as "Morgan Stanley."

7.      Defendant Brian F. Miller ("Miller") is an individual employed by or otherwise affiliated with Morgan Stanley as a First Vice President, Financial Advisor, & Corporate Retirement Director.  More specifically, according to the SEC Investment Adviser Representative Public Disclosure Report of Brian Francis Miller, Miller worked at Morgan Stanley Smith Barney LLC beginning in June 2009, and Morgan Stanley Private Bank, N.A. beginning in 2015.  He continues to be employed by Morgan Stanley, and his current business address is 53 State Street, Boston, MA  02109.  *See* Exhibit 1 (SEC Investment Adviser Representative Public Disclosure Report of Brian Francis Miller).  According to Miller's publicly available biography, he has worked for or been affiliated with Morgan Stanley (or a predecessor entity) since 1987.

## FACTS

### Background

8.      Feeney Brothers was founded by two brothers in 1988 as a utility construction company and today is a leading service provider for the natural gas, electric, and telecommunications industries throughout New England.

3

9.      The Plan is the 401(k) plan Feeney Brothers offers its employees for retirement savings.

10.     Morgan Stanley is a multinational investment bank and financial services company. Among other business lines, Morgan Stanley provides investment advice to individual clients (including Plaintiffs). For the second quarter ending June 30, 2018, Morgan Stanley earned over $10.6 billion in net revenue, reflecting $691 million in net revenue for its investment management services, with $474 billion assets under management.

11.     Miller, who has been employed by Morgan Stanley since 1987, works as a First Vice President, Financial Advisor, and Corporate Retirement Director at Morgan Stanley.

12.     In or about 2009, the Plan retained Miller (and Morgan Stanley) as its investment advisor.

13.     At or near the same time, Feeney Brothers and the Plan also retained QPSI as the Plan's third-party administrator ("TPA"), based on Miller's recommendation that it do so.

14.     In discussions with Feeney Brothers, Miller stressed his expertise in assisting 401(k) plans — not just by providing investment advice, but also by ensuring that the Plan's administrative and regulatory needs were met by capable TPAs. In that context, Miller represented to Feeney Brothers that QPSI had the aptitude, ability, and expertise to administer the Plan. Miller expressly recommended that, on the basis of his representations concerning QPSI's representations, Feeney Brothers and the Plan retain QPSI as the Plan's TPA.

15.     QPSI was the only TPA about which Miller made such a representation and it was the only TPA Miller advised Feeney Brothers to hire.

4

16.    In recommending Plaintiffs hire QPSI as the Plan's TPA and making representations in connection with that recommendation, Miller was acting within the scope of his employment at Morgan Stanley.

17.    At the time Feeney Brothers retained QPSI, it maintained a relatively small finance department with limited experience in 401(k) plan administration. Miller knew this fact, and marketed his services with it in mind: as someone capable of meeting all needs arising from the Plan, either personally or through recommendations to what he purported to be qualified third-parties.

18.    In reliance upon Miller's expertise and advice, Feeney Brothers hired QPSI as the Plan's TPA.

19.    QPSI, however, was not qualified to be the Plan's TPA. QPSI's business focused exclusively on the administration of small 401(k) plans, and QPSI was not equipped to handle the mid-sized and growing Plan.

20.    Miller knew or should have known that QPSI was not equipped to serve as Feeney Brother's TPA because, among other things, the Plan was larger than most plans administered by QPSI; QPSI lacked the aptitude, qualifications and experience to meet the Plan's needs; and those needs would grow only more complex and demanding as the Plan grew, rendering QPSI even more poorly suited for the TPA role.

21.    Instead Miller represented to Feeney Brothers and the Plan that QPSI ably provided services to other 401(k) plans with which Miller worked. Miller did not mention, however, that those plans were quite small, with needs far different than those of the Plan.

22.     Miller also represented to Feeney Brothers and the Plan that Miller knew and trusted QPSI's principal, Richard "Dick" Etling; Miller did not disclose, however, that Etling's business model focused exclusively on plans much smaller than the Plan.

23.     Moreover, and perhaps reflective of its small-plan client base, QPSI carried no insurance to protect it against losses caused by its failure to perform its duties as a TPA, a fact which Miller knew or at a minimum should have known, but which was not disclosed to Feeney Brothers.

24.     When Miller pitched Feeney Brothers to hire him and Morgan Stanley to become the investment advisor to the Plan, Miller did so as part of a package.  He estimated the cost of his investment advisory services together with other administrative services (i.e., those of QPSI and those of the platform through which the Plan would be administered), and presented everything packaged into one price.  QPSI's TPA services were relatively low cost, making Miller's pitch to become the investment advisor to the Plan more attractive.

25.     Over recent years, as Feeney Brothers grew, so too did the number of Plan participants.  Miller and Morgan Stanley knew these facts well because, as investment advisor to the Plan, Miller and Morgan Stanley benefited from them in the form of ever-increasing fees.

26.     But as the Plan grew in size, QPSI became even less qualified to serve as its TPA.  Of QPSI's approximately 300 clients, the Plan was its largest — by far.

27.     In fact, of QPSI's 300 clients, no more than a handful were 401(k) plans with more than 20 participants; in recent years, the Plan has had substantially more than 100 participants.

6

28.     In addition, QPSI provided TPA services exclusively to 401(k) plans that were not "large plans," i.e., those that were below the 100-participant threshold that under federal regulations triggers an annual public accounting audit of the Plan.

29.     For several years before 2014, the Plan neared the 100-participant threshold (as defined in federal regulations), and in 2014, the Plan crossed that threshold.  QPSI had no experience with administering a plan of that size and so notified Miller.

30.     Though Miller was aware of QPSI's unsuitability to administer the Plan, Miller did not share that information with Plaintiffs and instead continued to recommend QPSI and package QPSI's services with Miller's own.

### Losses Incurred by the Plan & Feeney Brothers

31.     Feeney Brothers became aware of QPSI's inability to meet reasonable standards of professional diligence only following audits of the Plan completed in mid-October 2015 and mid-October 2016, respectively.

32.     The 2015 audit determined that an error had occurred when QPSI used its template documents to restate the Plan.  Feeney Brothers had approved QPSI's request to use its template documents under one condition:  that they not alter any material provision of the Plan (including without limitation that bonus compensation not fall within the Plan's definition of "compensation").

33.     Under the Plan as it existed before QPSI's use of its template documents, if Plan participants wanted to include cash bonuses in "compensation" for purposes of elective deferrals and matching contributions, they were required to make an affirmative election to do so.  QPSI's restatement of the plan, however, included bonuses in "compensation," whether or not a Plan participant affirmatively elected to include bonuses.

7

34.     QPSI did not inform Feeney Brothers of the resulting change to the Plan document, leaving the company unaware that it had occurred.

35.     Upon discovering the error in October 2015, Feeney Brothers immediately began operating the Plan in compliance with the terms as QPSI had restated them (i.e., by calculating elective deferrals and matching contributions using a definition of "compensation" that includes bonuses).  In addition, Feeney Brothers incurred substantial legal fees to file an application to the IRS's Voluntary Correction Program to address and resolve the issue.

36.     The 2016 audit identified erroneous guidance provided to Feeney Brothers with respect to profit-sharing contributions to the Plan.  Federal rules require nondiscrimination between highly compensated employees ("HCEs") and non-highly compensated employees ("NHCEs") in connection with profit sharing contributions.  In 2010, based on guidance provided by QPSI, Feeney Brothers amended the Plan to alter its profit sharing contributions. QPSI committed to perform the nondiscrimination tests associated with the altered contributions.

37.     However, the 2016 audit uncovered that the Plan amendments designed by QPSI and the nondiscrimination tests administered by it were defective and inconsistent with federal nondiscrimination rules.  To remedy this issue, Feeney Brothers again had to apply to the IRS's Voluntary Correction Program.

38.     All told, Miller's recommendation to hire QPSI and QPSI's substandard performance caused Feeney Brothers to incur the following damages:  $676,950 in additional Plan contributions required by the IRS; more than $175,000 in attorneys' fees to remedy Plan defects and work with the IRS to achieve compliance through the Voluntary Correction Program; approximately $100,000 in Feeney Brothers in-house staff time to prepare the Voluntary Correction Program submission and remedy Plan defects; $50,845 in successor TPA fees for

8

time devoted to remedying the Plan defects; $12,000 to accountants to identify and address the Plan defects; and $7,500 in fees to the IRS for participation in the Voluntary Correction Program. In sum, Feeney Brothers and the Plan have sustained more than $1 million in losses.

## COUNT I
### Negligent Misrepresentation

39. Plaintiffs repeat and reallege the allegations of Paragraphs 1 through 38 as if fully set forth herein.

40. At the time Miller and Morgan Stanley were hired to provide investment advice to the Plan, Miller made inaccurate representations concerning QPSI, its aptitude and expertise, and its suitability to provide TPA services to the Plan.

41. In making those representations, Miller held himself out as an expert, and invited Feeney Brothers — which, at the time, had a small finance department, and limited 401(k)-related experience — to rely upon Miller's expertise. Miller advised Feeney Brothers and the Plan to retain QPSI and only QPSI.

42. In reasonable reliance on Miller's expertise, representations, and recommendation, Feeney Brothers and the Plan then retained QPSI.

43. In the years that followed, QPSI's unsuitability as a TPA for the Plan increased as the number of participants in the Plan grew.

44. Nevertheless, Miller praised the work of QPSI, continued to recommend its services, and never raised any concerns regarding its ability to administer a growing Plan.

45. But for Miller's representations and advice, neither Feeney Brothers nor the Plan would have retained QPSI; nor would either entity have believed that QPSI had the professional capacity to do the work for which it was hired.

9

46.    Feeney Brothers and the Plan were damaged as a direct and proximate result of Miller's negligent misrepresentations as described herein.

## COUNT II
### Fraudulent Inducement

47.    Plaintiffs repeat and reallege the allegations of Paragraphs 1 through 46 as if fully set forth herein.

48.    When Miller pitched Feeney Brothers and the Plan to hire him and Morgan Stanley as investment advisor to the Plan, Miller presented his services as part of a package with those of QPSI and those of the platform provider.

49.    In so doing, Miller provided an estimated total cost for annual services.  That cost was artificially low, because Miller had recommended a TPA on the basis of cost rather than qualifications, aptitude, and ability.

50.    Miller knew or should have known that QPSI was not qualified to serve as the Plan's TPA.

51.    Relying on Miller's expertise and representations regarding QPSI's aptitude, Feeney Brothers and the Plan retained Miller's and Morgan Stanley's services and those of QPSI as part of the package that Miller had presented.

52.    Accordingly, Miller made material misrepresentations, which benefited Miller and Morgan Stanley in the form of investment advisory fees, but which did not benefit the Plan (as it was left with an unsuitable TPA).

53.    As a direct and proximate result of these representations by Miller (made within the scope of his employment at Morgan Stanley), Plaintiffs have suffered damages as described herein.

10

## COUNT III
### Breach of the Covenant of Good Faith and Fair Dealing

54.     Plaintiffs repeat and reallege the allegations of Paragraphs 1 through 53 as if fully set forth herein.

55.     Feeney Brothers and the Plan contracted with Miller and Morgan Stanley to provide investment advisory services to support the Plan and its participants.

56.     In every contract, there is an implied covenant that the parties shall act in good faith, deal fairly with one another, and not undertake efforts that would deprive the other of the benefits of their contract.

57.     At all times, Plaintiffs acted in good faith and dealt fairly with Defendants in connection with their rights and obligations pursuant to the parties' contract.

58.     Defendants, however, did not act in good faith or deal fairly with Plaintiffs.

59.     Miller knew that QPSI was providing administrative services that it was ill-equipped to provide, thereby potentially damaging the Plan and compromising its assets.

60.     Miller also knew, or at a minimum should have known, that QPSI did not carry insurance to cover any losses caused by its failure to perform its duties as a TPA.

61.     Miller did not raise these concerns; nor did Miller share his knowledge that QPSI typically works with much smaller clients.

62.     When comprehensive audits were undertaken in 2015 and 2016, they uncovered the considerable consequences of QPSI's inaptitude.

63.     As a result of Defendants' bad faith and unfair dealing, Defendants benefitted from this contract, receiving investment advisory fees, but deprived Plaintiffs of the benefits they were entitled to receive under the parties' contract.

64.     As a direct and proximate result of Defendants' breaches of the implied covenant of good faith and fair dealing, Plaintiffs have suffered damages as described herein.

## COUNT IV
### Violation of G.L. c. 93A

65.     Plaintiffs repeat and reallege the allegations of Paragraphs 1 through 64 as if fully set forth herein.

66.     Plaintiffs and Defendants are each engaged in the conduct of trade and commerce within the meaning of G.L. c. 93A, §1(b).

67.     The above-described conduct of Defendants constitutes unfair and deceptive acts and practices in the conduct of trade or commerce, in violation of G.L. c. 93A, §§ 2 and 11.

68.     The above-described conduct of Defendants occurred primarily and substantially within the Commonwealth of Massachusetts.

69.     As a result of Defendants' wrongful acts and conduct, Plaintiffs have suffered substantial losses as described herein.

70.     Defendants' violations of G.L. c. 93A were willful and/or knowing, and Defendants are therefore liable to Plaintiffs for treble damages, in accordance with G.L. c. 93A, §§ 2 and 11.

71.     Plaintiffs are also entitled to an award of reasonable attorneys' fees and costs incurred in this action as a result of Defendants' violations of G.L. c. 93A, § 2.

12

WHEREFORE, Plaintiffs respectfully ask this Court to:

1. Enter judgment for Plaintiffs on all counts of this Complaint;

2. Award monetary damages to Plaintiffs in an amount to be proved at trial;

3. Award treble damages to Plaintiffs, as provided by G.L. c. 93A, § 11, for Defendants' violation of G.L. c. 93A, §2;

4. Award Plaintiffs their costs and attorneys' fees; and

5. Award such further relief as the Court deems just and proper.

## JURY DEMAND

PLAINTIFFS DEMAND A TRIAL BY JURY ON ALL COUNTS SO TRIABLE.

Respectfully submitted,

FEENEY BROTHERS EXCAVATION
LLC AND THE FEENEY BROTHERS
EXCAVATION CORPORATION 401(k)
PLAN

By its Attorneys,

*Donna A. Mizrahi*

Michael Patrick Moore, Jr., BBO# 670323
Donna A. Mizrahi, Esq., BBO# 678412
HEMENWAY & BARNES LLP
75 State Street
Boston, Massachusetts 02109
(617) 227-7940

Dated:   October 12, 2018

13

# EXHIBIT 1



www.adviserinfo.sec.gov

Investment Adviser Representative Public Disclosure Report

# BRIAN FRANCIS MILLER

CRD# 1721961

Report #49128-72070, data current as of Thursday, October 11, 2018.

| Section Title | Page(s) |
| --- | --- |
| Report Summary | 1 |
| Qualifications | 2 - 3 |
| Registration and Employment History | 4 |

www.adviserinfo.sec.gov

**IAPD Information about Investment Adviser Representatives**

IAPD offers information on all current-and many former-Investment Adviser Representatives. Investors are strongly encouraged to use IAPD to check the background of Investment Adviser Representatives before deciding to conduct, or continue to conduct, business with them.

- **What is included in a IAPD report?**
- IAPD reports for individual Investment Adviser Representatives include information such as employment history, professional qualifications, disciplinary actions, criminal convictions, civil judgments and arbitration awards.

- It is important to note that the information contained in an IAPD report may include pending actions or allegations that may be contested, unresolved or unproven. In the end, these actions or allegations may be resolved in favor of the Investment Adviser Representative, or concluded through a negotiated settlement with no admission or finding of wrongdoing.

- **Where did this information come from?**
- The information contained in IAPD comes from the Investment Adviser Registration Depository (IARD) and FINRA's Central Registration Depository, or CRD®, (see more on CRD below) and is a combination of:

  - information the states require Investment Adviser Representatives and firms to submit as part of the registration and licensing process, and
  - information that state regulators report regarding disciplinary actions or allegations against Investment Adviser Representatives.
  -

- **How current is this information?**
- Generally, Investment Adviser Representatives are required to update their professional and disciplinary information in IARD within 30 days.

- **Need help interpreting this report?**
- For help understanding how to read this report, please consult NASAA's IAPD Tips page http://www.nasaa.org/IAPD/IARReports.cfm.

- **What if I want to check the background of an Individual Broker or Brokerage firm?**
- To check the background of an Individual Broker or Brokerage firm, you can search for the firm or individual in IAPD. If your search is successful, click on the link provided to view the available licensing and registration information in FINRA's BrokerCheck website.

- **Are there other resources I can use to check the background of investment professionals?**
- It is recommended that you learn as much as possible about an individual Investment Adviser Representative or Investment Adviser firm before deciding to work with them. Your state securities regulator can help you research individuals and certain firms doing business in your state. The contact information for state securities regulators can be found on the website of the North American Securities Administrators Association http://www.nasaa.org.



www.adviserinfo.sec.gov

## Investment Adviser Representative Report Summary

### BRIAN FRANCIS MILLER (CRD# 1721961)

The report summary provides an overview of the Investment Adviser Representative's professional background and conduct. The information contained in this report has been provided by the Investment Adviser Representative, investment adviser and/or securities firms, and/or securities regulators as part of the states' investment adviser registration and licensing process. The information contained in this report was last updated by the Investment Adviser Representative, a previous employing firm, or a securities regulator on **08/02/2018**.

## CURRENT EMPLOYERS

**MORGAN STANLEY**
IARD# 149777
53 STATE STREET
BOSTON, MA  02109
Registered with this firm since: 07/05/2018

## QUALIFICATIONS

This Investment Adviser Representative is currently registered in **1** jurisdiction(s).

Is this Investment Adviser Representative currently suspended with any jurisdiction? **No**

**Note:** Not all jurisdictions require IAR registration or may have an exemption from registration.
Additional information including this individual's qualification examinations and professional designations is available in the Detailed Report.

## REGISTRATION HISTORY

This Investment Adviser Representative was previously registered with the following Investment Adviser firms:

No information reported.

For additional registration and employment history details as reported by the individual, refer to the Registration and Employment History section of the Detailed Report.

## DISCLOSURE INFORMATION

Disclosure events include certain criminal charges and convictions, formal investigations and disciplinary actions initiated by regulators, customer disputes and arbitrations, and financial disclosures such as bankruptcies and unpaid judgments or liens.

Are there events disclosed about this Investment Adviser Representative?     **No**



# Investment Adviser Representative Qualifications

## REGISTRATIONS

This section provides the states and U.S. territories in which the Investment Adviser Representative is currently registered and licensed, the category of each registration, and the date on which the registration became effective. This section also provides, for each firm with which the Investment Adviser Representative is currently employed, the address of each location where the Investment Adviser Representative works.

This individual is currently registered with **1** jurisdiction(s) through his or her employer(s).

## Employment 1 of 1

Firm Name:           **MORGAN STANLEY**

Main Address:        2000 WESTCHESTER AVENUE
                     PURCHASE, NY 10577-2530

Firm IARD#:          149777

| U.S. State/ Territory | Status | Date |
|---|---|---|
| Connecticut | Approved | 07/05/2018 |

## Branch Office Locations

**MORGAN STANLEY**
53 STATE STREET
BOSTON, MA 02109

www.adviserinfo.sec.gov

# Investment Adviser Representative Qualifications

## PASSED INDUSTRY EXAMS

This section includes all required state securities exams that the Investment Adviser Representative has passed. Under limited circumstances, an Investment Adviser Representative may attain registration after receiving an exam waiver based on a combination of exams the Investment Adviser Representative has passed and qualifying work experience. Likewise, a new exam requirement may be grandfathered based on an Investment Adviser Representative's specific qualifying work experience. Exam waivers and grandfathering are not included below.

This individual has passed the following exams:

| Exam | Category | Date |
|------|----------|------|
| Uniform Securities Agent State Law Examination (S63) | Series 63 | 10/19/1987 |
| Uniform Combined State Law Examination (S66) | Series 66 | 07/05/2018 |

## PROFESSIONAL DESIGNATIONS

This section details that the Investment Adviser Representative has reported **0** professional designation(s).

No information reported.



# Investment Adviser Representative Registration and Employment History

## PREVIOUSLY REGISTERED WITH THE FOLLOWING INVESTMENT ADVISER FIRMS

This section indicates that state registration records show this Investment Adviser Representative previously held registrations with the following firms:

No information reported.

## EMPLOYMENT HISTORY

Below is the Investment Adviser Representative's employment history for up to the last 10 years.

**Please note that the Investment Adviser Representative is required to provide this information only while registered and the information is not updated after the Investment Adviser Representative ceases to be registered, with a state regulator. Therefore, an employment end date of "Present" may not reflect the Investment Adviser Representative's current employment status.**

| Employment Dates | Employer Name | Employer Location |
|---|---|---|
| 01/2015 - Present | MORGAN STANLEY PRIVATE BANK, NATIONAL ASSOCIATION | NEW YORK, NY |
| 06/2009 - Present | MORGAN STANLEY SMITH BARNEY | BOSTON, MA |
| 11/2005 - Present | CITIGROUP GLOBAL MARKETS INC. | BOSTON, MA |

## OTHER BUSINESS ACTIVITIES

This section includes information, if any, as provided by the Investment Adviser Representative regarding other business activities the Investment Adviser Representative is currently engaged in either as a proprietor, partner, officer, director, employee, trustee, agent, or otherwise. This section does not include non-investment related activity that is exclusively charitable, civic, religious, or fraternal and is recognized as tax exempt.

No information reported.



www.adviserinfo.sec.gov

# End of Report

This page is intentionally left blank.

©2018 FINRA. All rights reserved. Report# 49128-72070 requested on Thursday, October 11, 2018 about BRIAN FRANCIS MILLER.

| CIVIL ACTION COVER SHEET | DOCKET NUMBER | Trial Court of Massachusetts<br>The Superior Court |
|---|---|---|

**PLAINTIFF(S):** Feeney Brothers Excavation LLC

**ADDRESS:** and Feeney Brothers Excavation Corporation 401(k) Plan

**COUNTY**
Suffolk

**DEFENDANT(S):** Morgan Stanley & Co., LLC, Morgan Stanley Private Bank, N.A.,

Morgan Stanley Smith Barney LLC and Brian F. Miller

**ATTORNEY:** M. Patrick Moore, Esq./Donna A. Mizrahi, Esq.

**ADDRESS:** Hemenway & Barnes LLP, 75 State Street

**ADDRESS:**

Boston, MA 02109

**BBO:** 670323/678412

## TYPE OF ACTION AND TRACK DESIGNATION (see reverse side)

| CODE NO. | TYPE OF ACTION (specify) | TRACK | HAS A JURY CLAIM BEEN MADE? |
|---|---|---|---|
| ~~A99~~/B99 | ~~Contract/Business Action/~~Tortious Action | F | ☒ YES   ☐ NO |

*If "Other" please describe: Negligent misrepresentation; fraudulent inducement; G.L. c. 93A

## STATEMENT OF DAMAGES PURSUANT TO G.L. c. 212, § 3A

The following is a full, itemized and detailed statement of the facts on which the undersigned plaintiff or plaintiff counsel relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

### TORT CLAIMS
(attach additional sheets as necessary)

A. Documented medical expenses to date:
    1. Total hospital expenses ............................................................................................................................ $ _____
    2. Total doctor expenses ............................................................................................................................. $ _____
    3. Total chiropractic expenses .................................................................................................................... $ _____
    4. Total physical therapy expenses ............................................................................................................ $ _____
    5. Total other expenses (describe below) ................................................................................................... $ _____
                                              Subtotal (A): $ _____

B. Documented lost wages and compensation to date ..................................................................................... $ _____
C. Documented property damages to dated ..................................................................................................... $ _____
D. Reasonably anticipated future medical and hospital expenses ..................................................................... $ _____
E. Reasonably anticipated lost wages ............................................................................................................. $ _____
F. Other documented items of damages (describe below) .................................................................................. $ _____

G. Briefly describe plaintiff's injury, including the nature and extent of injury:

                                                        TOTAL (A-F):$ _____

### CONTRACT CLAIMS
(attach additional sheets as necessary)

Provide a detailed description of claims(s):

Contract/Tort
Combined   TOTAL: $  1 Million+

**Signature of Attorney/Pro Se Plaintiff: X** _Donna A. Mizrahi_     **Date:** 10/12/2018

**RELATED ACTIONS:** Please provide the case number, case name, and county of any related actions pending in the Superior Court.

## CERTIFICATION PURSUANT TO SJC RULE 1:18

I hereby certify that I have complied with requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods of dispute resolution.

**Signature of Attorney of Record: X** _Donna A. Mizrahi_     **Date:** 10/12/2018

| CIVIL TRACKING ORDER (STANDING ORDER 1- 88) | DOCKET NUMBER 1884CV03183 | Trial Court of Massachusetts The Superior Court |
|---|---|---|
| CASE NAME: Feeney Brothers Excavation LLC et al vs. Morgan Stanley & Co LLC et al | | Michael Joseph Donovan, Clerk of Court |
| TO: | | COURT NAME & ADDRESS Suffolk County Superior Court - Civil Suffolk County Courthouse, 12th Floor Three Pemberton Square Boston, MA 02108 |

### TRACKING ORDER - F - Fast Track

You are hereby notified that this case is on the track referenced above as per Superior Court Standing Order 1-88. The order requires that the various stages of litigation described below must be completed not later than the deadlines indicated.

### STAGES OF LITIGATION                                  DEADLINE

|  | SERVED BY | FILED BY | HEARD BY |
|---|---|---|---|
| Service of process made and return filed with the Court | | 01/10/2019 | |
| Response to the complaint filed (also see MRCP 12) | | 02/11/2019 | |
| All motions under MRCP 12, 19, and 20 | 02/11/2019 | 03/11/2019 | 04/10/2019 |
| All motions under MRCP 15 | 02/11/2019 | 03/11/2019 | 04/10/2019 |
| All discovery requests and depositions served and non-expert depositions completed | 08/08/2019 | | |
| All motions under MRCP 56 | 09/09/2019 | 10/07/2019 | |
| Final pre-trial conference held and/or firm trial date set | | | 02/04/2020 |
| Case shall be resolved and judgment shall issue by | | | 10/12/2020 |

The final pre-trial deadline is not the scheduled date of the conference. You will be notified of that date at a later time. Counsel for plaintiff must serve this tracking order on defendant before the deadline for filing return of service. This case is assigned to

| DATE ISSUED 10/12/2018 | ASSISTANT CLERK Jane M Mahon | PHONE (617)788-8110 |
|---|---|---|

CT Corporation

**Service of Process Transmittal**
10/15/2018
CT Log Number 534232008

**TO:**   Erin Law
Morgan Stanley Law Division
1633 Broadway, 26th Fl
New York, NY 10019

**RE:**   **Process Served in Massachusetts**

**FOR:**   Morgan Stanley Smith Barney LLC  (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | FEENEY BROTHERS EXCAVATION LLC AND FEENEY BROTHERS EXCAVATION CORPORATION 401(k) PLAN, Pltfs. vs. MORGAN STANLEY & CO. LLC, et al., Dfts. // To: Morgan Stanley Smith Barney LLC |
| **DOCUMENT(S) SERVED:** | Summons, Attachment(s), Complaint, Exhibit(s) |
| **COURT/AGENCY:** | Suffolk County Superior Court, MA<br>Case # 1884CV03183D |
| **NATURE OF ACTION:** | Breach of the Covenant of Good Faith and Fair Dealing |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Boston, MA |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 10/15/2018 at 09:00 |
| **JURISDICTION SERVED :** | Massachusetts |
| **APPEARANCE OR ANSWER DUE:** | Within 20 days |
| **ATTORNEY(S) / SENDER(S):** | Michael Patrick Moore, Jr.<br>HEMEN WAY & BARNES LLP<br>75 State Street<br>Boston, MA 02109<br>617-227-7940 |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 10/16/2018, Expected Purge Date: 11/15/2018 |
| | Image SOP |
| | Email Notification,  Andrea Carty-Abrahams  Andrea.Carty@morganstanley.com |
| | Email Notification,  Adeleke Berry  addy.berry@morganstanley.com |
| | Email Notification,  Veronica Castro  Veronica.Castro@morganstanley.com |
| | Email Notification,  Jessica Bradshaw  Jessica.bradshaw@morganstanley.com |
| | Email Notification,  Mary Beth Trevino  trevinob@saxonmsi.com |
| | Email Notification,  Erin Law  Erin.Law@morganstanley.com |
| | Email Notification,  Elizabeth Waggoner  Elizabeth.Waggoner@morganstanley.com |

Page 1 of  2 / DA

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

 CT Corporation

**Service of Process Transmittal**
10/15/2018
CT Log Number 534232008

**TO:**      Erin Law
Morgan Stanley Law Division
1633 Broadway, 26th Fl
New York, NY 10019

**RE:**      **Process Served in Massachusetts**

**FOR:**     Morgan Stanley Smith Barney LLC   (Domestic State: DE)

Email Notification,  Lawrence Barbot  Lawrence.Barbot@morganstanley.com

Email Notification,  Jyotsna Rasam  Jyotsna.Rasam@morganstanley.com

Email Notification,  Marina Aminov  marina.aminov@morganstanley.com

Email Notification,  Diane L. Gray  Diane.L.Gray@morganstanley.com

Email Notification,  Tahitia Martin  Tahitia.Martin@morganstanley.com

Email Notification,  Gwanda Brown  Gwanda.v.brown@morganstanley.com

Email Notification,  Kunzah Mirza  Kunzah.mirza@morganstanley.com

Email Notification,  Ishwar Ingle  Ishwar.Ingle@morganstanley.com

Email Notification,  Shushi Shetty  Shushi.Shetty@morganstanley.com

Email Notification,  Bhakti Rasal  Bhakti.Rasal@morganstanley.com

Email Notification,  CHRISTINE PINTO  christine.pinto@morganstanley.com

**SIGNED:**      C T Corporation System
**ADDRESS:**     155 Federal St Ste 700
Boston, MA 02110-1727
**TELEPHONE:**   617-757-6404

Page 2 of  2 / DA

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

## Commonwealth of Massachusetts

SUFFOLK, SS.

FEENEY BROTHERS EXCAVATION LLC
AND FEENEY BROTHERS EXCAVATION
CORPORATION 401(k) PLAN , PLAINTIFF(S),

v.

MORGAN STANLEY & CO. LLC,
MORGAN STANLEY PRIVATE , DEFENDANT(S)
BANK, N.A., MORGAN STANLEY SMITH
BARNEY LLC AND BRIAN F. MILLER    SUMMONS

TRIAL COURT OF THE COMMONWEALTH
SUPERIOR COURT DEPARTMENT
CIVIL DOCKET NO. 1884CV03183D

THIS SUMMONS IS DIRECTED TO MORGAN STANLEY SMITH BARNEY LLC (Defendant's name)

**You are being sued.** The Plaintiff(s) named above has started a lawsuit against you. A copy of the Plaintiff's Complaint filed against you is attached to this summons and the original complaint has been filed in the Suffolk Superior Court. **YOU MUST ACT PROMPTLY TO PROTECT YOUR RIGHTS.**

1. **You must respond to this lawsuit in writing within 20 days.** If you do not respond, the court may decide the case against you and award the Plaintiff everything asked for in the complaint. You will also lose the opportunity to tell your side of the story. You must respond to this lawsuit in writing even if you expect to resolve this matter with the Plaintiff. **If you need more time to respond, you may request an extension of time in writing from the Court.**

2. **How to Respond.** To respond to this lawsuit, you must file a written response with the court **and** mail a copy to the Plaintiff's Attorney (or the Plaintiff, if unrepresented). You can do this by:

   a. Filing your signed original response with the Clerk's Office for Civil Business, Suffolk Court, 3 Pemberton Sq. Boston, MA 02108 (address), by mail or in person, **AND**

   b. Delivering or mailing a copy of your response to the Plaintiff's Attorney/Plaintiff at the following address: Hemenway & Barnes LLP, 75 State St., 16th Floor, Boston, MA 02109

3. **What to include in your response.** An "Answer" is one type of response to a Complaint. Your Answer must state whether you agree or disagree with the fact(s) alleged in each paragraph of the Complaint. Some defenses, called affirmative defenses, must be stated in your Answer or you may lose your right to use them in court. If you have any claims against the Plaintiff (referred to as **counterclaims**) that are based on the same facts or transaction described in the Complaint, then you must include those claims in your Answer. Otherwise, you may lose your right to sue the Plaintiff about anything related to this lawsuit. If you want to have your case heard by a jury, you must specifically request a jury trial in your Answer or in a written demand for a jury trial that you must send to the other side and file with the court no more than 10 days after sending your Answer. You can also respond to a Complaint by filing a "Motion to Dismiss," if you believe that the complaint is legally invalid or legally insufficient. A Motion to Dismiss must be based on one of the legal deficiencies or reasons listed under **Mass. R. Civ. P. 12.** If you are filing a Motion to Dismiss, you must also comply with the filing procedures for "Civil Motions" described in the rules of the Court in which the complaint was filed, available at www.mass.gov.courts/case-legal-res/rules of court.

Joseph P Casey

A true copy Attest:

Deputy Sheriff Suffolk County

10-15-18

4.  **Legal Assistance.** You may wish to get legal help from a lawyer. If you cannot get legal help, some basic information for people who represent themselves is available at www.mass.gov/courts/selfhelp.

5.  **Required information on all filings:** The "civil docket number" appearing at the top of this notice is the case number assigned to this case and must appear on the front of your Answer or Motion to Dismiss. You should refer to yourself as the "Defendant."

Witness Hon. Judith Fabricant, Chief Justice on _____, 20____.

*Michael Joseph Donovan*
Michael Joseph Donovan
Clerk-Magistrate

Note: The number assigned to the Complaint by the Clerk-Magistrate at the beginning of the lawsuit should be indicated on the summons before it is served on the Defendant.

## PROOF OF SERVICE OF PROCESS

I hereby certify that on _____, 20___, I served a copy of this summons, together with a copy of the complaint in this action, on the defendant named in this summons, in the following manner (See Mass. R. Civ. P. 4 (d)(1-5)):

_____

_____

_____

Dated: _____, 20___    Signature: _____

N.B.    TO PROCESS SERVER:

PLEASE ENTER THE DATE THAT YOU MADE SERVICE ON THE DEFENDANT IN THIS BOX — BOTH ON THE ORIGINAL SUMMONS AND ON THE COPY OF THE SUMMONS SERVED ON THE DEFENDANT.

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss                                   SUPERIOR COURT DEPARTMENT
                                              CIVIL ACTION NO.

| | |
|---|---|
| FEENEY BROTHERS EXCAVATION LLC AND FEENEY BROTHERS EXCAVATION CORPORATION 401(k) PLAN<br><br>        Plaintiffs<br><br>v.<br><br>MORGAN STANLEY & CO. LLC, MORGAN STANLEY PRIVATE BANK, N.A., MORGAN STANLEY SMITH BARNEY LLC, AND BRIAN F. MILLER<br><br>        Defendants | |

## COMPLAINT

By this action, plaintiffs Feeney Brothers Excavation LLC ("Feeney Brothers") and the Feeney Brothers Excavation Corporation 401(k) Plan (the "Plan") seek damages from defendants Morgan Stanley & Co. LLC, Morgan Stanley Private Bank, N.A., Morgan Stanley Smith Barney LLC (collectively "Morgan Stanley") and Brian F. Miller ("Miller"), an investment adviser employed by Morgan Stanley, arising out of Miller's representations concerning Qualified Pension Services, Inc. ("QPSI") and his recommendation that Feeney Brothers hire QPSI to serve as the Plan's third-party administrator ("TPA").

Despite Miller's representations, QPSI was not qualified to serve as the Plan's TPA when it was hired, and it became even more ill-suited to serve as TPA as the number of Plan participants grew. In fact, QPSI made two significant errors in administering the Plan – discovered through audits in 2015 and 2016 – which Feeney Brothers and the Plan were required

1

to remedy. Feeney Brothers and the Plan have sustained more than $1 million in losses in total to pay additional Plan contributions required by the IRS, as well as attorneys' fees, in-house staff time, successor TPA fees, accountant fees, and IRS fees to address the errors. These damages were the result of Miller's recommendation to hire QPSI, and the negligent misrepresentations he made in connection with that recommendation, which resulted in Feeney Brothers being fraudulently induced to enter a contract with Miller and Morgan Stanley. Miller's conduct also breached the covenant of good faith and fair dealing and failed to comport with the prohibition on unfair and deceptive trade practices established by Chapter 93A.

## PARTIES

1.     Plaintiff Feeney Brothers is a limited liability company organized under the laws of the Commonwealth of Massachusetts and having a principal place of business of 103 Clayton Street, Dorchester, MA 02122.

2.     Plaintiff the Plan is the 401(k) plan provided to Feeney Brothers employees. The Plan is administered at Feeney Brothers' principal place of business, 103 Clayton Street, Dorchester, MA 02122.

3.     Defendant Morgan Stanley & Co. LLC is a limited liability company organized under the laws of the state of Delaware with its principal place of business located at 1585 Broadway Avenue, New York, NY 10036. In Massachusetts, Morgan Stanley & Co. LLC's principal place of business is 1 International Place, 13th Floor, Boston, MA 02110.

4.     Defendant Morgan Stanley Smith Barney LLC is a limited liability company organized under the laws of the state of Delaware with its principal place of business located at 1585 Broadway Avenue, New York, NY 10036. Morgan Stanley Smith Barney LLC is registered to do business in the Commonwealth of Massachusetts.

2

5.    Defendant Morgan Stanley Private Bank, N.A. is a national bank with its principal place of business at 2000 Westchester Avenue, Purchase, NY, 10577. Morgan Stanley Private Bank, N.A. is listed as Defendant Miller's current employer, with a branch office location located at 53 State Street, Boston, MA 02109. *See* Exhibit 1 (SEC Investment Adviser Representative Public Disclosure Report of Brian Francis Miller).

6.    Defendant Morgan Stanley & Co. LLC, Defendant Morgan Stanley Smith Barney LLC, and Defendant Morgan Stanley Private Bank, N.A., including predecessor entities of each of the foregoing, will be referenced collectively as "Morgan Stanley."

7.    Defendant Brian F. Miller ("Miller") is an individual employed by or otherwise affiliated with Morgan Stanley as a First Vice President, Financial Advisor, & Corporate Retirement Director. More specifically, according to the SEC Investment Adviser Representative Public Disclosure Report of Brian Francis Miller, Miller worked at Morgan Stanley Smith Barney LLC beginning in June 2009, and Morgan Stanley Private Bank, N.A. beginning in 2015. He continues to be employed by Morgan Stanley, and his current business address is 53 State Street, Boston, MA 02109. *See* Exhibit 1 (SEC Investment Adviser Representative Public Disclosure Report of Brian Francis Miller). According to Miller's publicly available biography, he has worked for or been affiliated with Morgan Stanley (or a predecessor entity) since 1987.

## FACTS

### Background

8.    Feeney Brothers was founded by two brothers in 1988 as a utility construction company and today is a leading service provider for the natural gas, electric, and telecommunications industries throughout New England.

3

9.      The Plan is the 401(k) plan Feeney Brothers offers its employees for retirement savings.

10.     Morgan Stanley is a multinational investment bank and financial services company. Among other business lines, Morgan Stanley provides investment advice to individual clients (including Plaintiffs). For the second quarter ending June 30, 2018, Morgan Stanley earned over $10.6 billion in net revenue, reflecting $691 million in net revenue for its investment management services, with $474 billion assets under management.

11.     Miller, who has been employed by Morgan Stanley since 1987, works as a First Vice President, Financial Advisor, and Corporate Retirement Director at Morgan Stanley.

12.     In or about 2009, the Plan retained Miller (and Morgan Stanley) as its investment advisor.

13.     At or near the same time, Feeney Brothers and the Plan also retained QPSI as the Plan's third-party administrator ("TPA"), based on Miller's recommendation that it do so.

14.     In discussions with Feeney Brothers, Miller stressed his expertise in assisting 401(k) plans — not just by providing investment advice, but also by ensuring that the Plan's administrative and regulatory needs were met by capable TPAs. In that context, Miller represented to Feeney Brothers that QPSI had the aptitude, ability, and expertise to administer the Plan. Miller expressly recommended that, on the basis of his representations concerning QPSI's representations, Feeney Brothers and the Plan retain QPSI as the Plan's TPA.

15.     QPSI was the only TPA about which Miller made such a representation and it was the only TPA Miller advised Feeney Brothers to hire.

4

16.     In recommending Plaintiffs hire QPSI as the Plan's TPA and making representations in connection with that recommendation, Miller was acting within the scope of his employment at Morgan Stanley.

17.     At the time Feeney Brothers retained QPSI, it maintained a relatively small finance department with limited experience in 401(k) plan administration.  Miller knew this fact, and marketed his services with it in mind:  as someone capable of meeting all needs arising from the Plan, either personally or through recommendations to what he purported to be qualified third-parties.

18.     In reliance upon Miller's expertise and advice, Feeney Brothers hired QPSI as the Plan's TPA.

19.     QPSI, however, was not qualified to be the Plan's TPA.  QPSI's business focused exclusively on the administration of small 401(k) plans, and QPSI was not equipped to handle the mid-sized and growing Plan.

20.     Miller knew or should have known that QPSI was not equipped to serve as Feeney Brother's TPA because, among other things, the Plan was larger than most plans administered by QPSI; QPSI lacked the aptitude, qualifications and experience to meet the Plan's needs; and those needs would grow only more complex and demanding as the Plan grew, rendering QPSI even more poorly suited for the TPA role.

21.     Instead Miller represented to Feeney Brothers and the Plan that QPSI ably provided services to other 401(k) plans with which Miller worked.  Miller did not mention, however, that those plans were quite small, with needs far different than those of the Plan.

5

22.    Miller also represented to Feeney Brothers and the Plan that Miller knew and trusted QPSI's principal, Richard "Dick" Etling; Miller did not disclose, however, that Etling's business model focused exclusively on plans much smaller than the Plan.

23.    Moreover, and perhaps reflective of its small-plan client base, QPSI carried no insurance to protect it against losses caused by its failure to perform its duties as a TPA, a fact which Miller knew or at a minimum should have known, but which was not disclosed to Feeney Brothers.

24.    When Miller pitched Feeney Brothers to hire him and Morgan Stanley to become the investment advisor to the Plan, Miller did so as part of a package.  He estimated the cost of his investment advisory services together with other administrative services (i.e., those of QPSI and those of the platform through which the Plan would be administered), and presented everything packaged into one price.  QPSI's TPA services were relatively low cost, making Miller's pitch to become the investment advisor to the Plan more attractive.

25.    Over recent years, as Feeney Brothers grew, so too did the number of Plan participants.  Miller and Morgan Stanley knew these facts well because, as investment advisor to the Plan, Miller and Morgan Stanley benefited from them in the form of ever-increasing fees.

26.    But as the Plan grew in size, QPSI became even less qualified to serve as its TPA.  Of QPSI's approximately 300 clients, the Plan was its largest — by far.

27.    In fact, of QPSI's 300 clients, no more than a handful were 401(k) plans with more than 20 participants; in recent years, the Plan has had substantially more than 100 participants.

6

28.     In addition, QPSI provided TPA services exclusively to 401(k) plans that were not "large plans," i.e., those that were below the 100-participant threshold that under federal regulations triggers an annual public accounting audit of the Plan.

29.     For several years before 2014, the Plan neared the 100-participant threshold (as defined in federal regulations), and in 2014, the Plan crossed that threshold.  QPSI had no experience with administering a plan of that size and so notified Miller.

30.     Though Miller was aware of QPSI's unsuitability to administer the Plan, Miller did not share that information with Plaintiffs and instead continued to recommend QPSI and package QPSI's services with Miller's own.

## Losses Incurred by the Plan & Feeney Brothers

31.     Feeney Brothers became aware of QPSI's inability to meet reasonable standards of professional diligence only following audits of the Plan completed in mid-October 2015 and mid-October 2016, respectively.

32.     The 2015 audit determined that an error had occurred when QPSI used its template documents to restate the Plan.  Feeney Brothers had approved QPSI's request to use its template documents under one condition:  that they not alter any material provision of the Plan (including without limitation that bonus compensation not fall within the Plan's definition of "compensation").

33.     Under the Plan as it existed before QPSI's use of its template documents, if Plan participants wanted to include cash bonuses in "compensation" for purposes of elective deferrals and matching contributions, they were required to make an affirmative election to do so.  QPSI's restatement of the plan, however, included bonuses in "compensation," whether or not a Plan participant affirmatively elected to include bonuses.

7

34.     QPSI did not inform Feeney Brothers of the resulting change to the Plan document, leaving the company unaware that it had occurred.

35.     Upon discovering the error in October 2015, Feeney Brothers immediately began operating the Plan in compliance with the terms as QPSI had restated them (i.e., by calculating elective deferrals and matching contributions using a definition of "compensation" that includes bonuses).  In addition, Feeney Brothers incurred substantial legal fees to file an application to the IRS's Voluntary Correction Program to address and resolve the issue.

36.     The 2016 audit identified erroneous guidance provided to Feeney Brothers with respect to profit-sharing contributions to the Plan.  Federal rules require nondiscrimination between highly compensated employees ("HCEs") and non-highly compensated employees ("NHCEs") in connection with profit sharing contributions.  In 2010, based on guidance provided by QPSI, Feeney Brothers amended the Plan to alter its profit sharing contributions. QPSI committed to perform the nondiscrimination tests associated with the altered contributions.

37.     However, the 2016 audit uncovered that the Plan amendments designed by QPSI and the nondiscrimination tests administered by it were defective and inconsistent with federal nondiscrimination rules.  To remedy this issue, Feeney Brothers again had to apply to the IRS's Voluntary Correction Program.

38.     All told, Miller's recommendation to hire QPSI and QPSI's substandard performance caused Feeney Brothers to incur the following damages:  $676,950 in additional Plan contributions required by the IRS; more than $175,000 in attorneys' fees to remedy Plan defects and work with the IRS to achieve compliance through the Voluntary Correction Program; approximately $100,000 in Feeney Brothers in-house staff time to prepare the Voluntary Correction Program submission and remedy Plan defects; $50,845 in successor TPA fees for

8

time devoted to remedying the Plan defects; $12,000 to accountants to identify and address the Plan defects; and $7,500 in fees to the IRS for participation in the Voluntary Correction Program. In sum, Feeney Brothers and the Plan have sustained more than $1 million in losses.

## COUNT I
### Negligent Misrepresentation

39.    Plaintiffs repeat and reallege the allegations of Paragraphs 1 through 38 as if fully set forth herein.

40.    At the time Miller and Morgan Stanley were hired to provide investment advice to the Plan, Miller made inaccurate representations concerning QPSI, its aptitude and expertise, and its suitability to provide TPA services to the Plan.

41.    In making those representations, Miller held himself out as an expert, and invited Feeney Brothers — which, at the time, had a small finance department, and limited 401(k)-related experience — to rely upon Miller's expertise. Miller advised Feeney Brothers and the Plan to retain QPSI and only QPSI.

42.    In reasonable reliance on Miller's expertise, representations, and recommendation, Feeney Brothers and the Plan then retained QPSI.

43.    In the years that followed, QPSI's unsuitability as a TPA for the Plan increased as the number of participants in the Plan grew.

44.    Nevertheless, Miller praised the work of QPSI, continued to recommend its services, and never raised any concerns regarding its ability to administer a growing Plan.

45.    But for Miller's representations and advice, neither Feeney Brothers nor the Plan would have retained QPSI; nor would either entity have believed that QPSI had the professional capacity to do the work for which it was hired.

9

46.    Feeney Brothers and the Plan were damaged as a direct and proximate result of Miller's negligent misrepresentations as described herein.

## COUNT II
### Fraudulent Inducement

47.    Plaintiffs repeat and reallege the allegations of Paragraphs 1 through 46 as if fully set forth herein.

48.    When Miller pitched Feeney Brothers and the Plan to hire him and Morgan Stanley as investment advisor to the Plan, Miller presented his services as part of a package with those of QPSI and those of the platform provider.

49.    In so doing, Miller provided an estimated total cost for annual services. That cost was artificially low, because Miller had recommended a TPA on the basis of cost rather than qualifications, aptitude, and ability.

50.    Miller knew or should have known that QPSI was not qualified to serve as the Plan's TPA.

51.    Relying on Miller's expertise and representations regarding QPSI's aptitude, Feeney Brothers and the Plan retained Miller's and Morgan Stanley's services and those of QPSI as part of the package that Miller had presented.

52.    Accordingly, Miller made material misrepresentations, which benefited Miller and Morgan Stanley in the form of investment advisory fees, but which did not benefit the Plan (as it was left with an unsuitable TPA).

53.    As a direct and proximate result of these representations by Miller (made within the scope of his employment at Morgan Stanley), Plaintiffs have suffered damages as described herein.

10

## COUNT III
### Breach of the Covenant of Good Faith and Fair Dealing

54.    Plaintiffs repeat and reallege the allegations of Paragraphs 1 through 53 as if fully set forth herein.

55.    Feeney Brothers and the Plan contracted with Miller and Morgan Stanley to provide investment advisory services to support the Plan and its participants.

56.    In every contract, there is an implied covenant that the parties shall act in good faith, deal fairly with one another, and not undertake efforts that would deprive the other of the benefits of their contract.

57.    At all times, Plaintiffs acted in good faith and dealt fairly with Defendants in connection with their rights and obligations pursuant to the parties' contract.

58.    Defendants, however, did not act in good faith or deal fairly with Plaintiffs.

59.    Miller knew that QPSI was providing administrative services that it was ill-equipped to provide, thereby potentially damaging the Plan and compromising its assets.

60.    Miller also knew, or at a minimum should have known, that QPSI did not carry insurance to cover any losses caused by its failure to perform its duties as a TPA.

61.    Miller did not raise these concerns; nor did Miller share his knowledge that QPSI typically works with much smaller clients.

62.    When comprehensive audits were undertaken in 2015 and 2016, they uncovered the considerable consequences of QPSI's inaptitude.

63.    As a result of Defendants' bad faith and unfair dealing, Defendants benefitted from this contract, receiving investment advisory fees, but deprived Plaintiffs of the benefits they were entitled to receive under the parties' contract.

11

64.    As a direct and proximate result of Defendants' breaches of the implied covenant of good faith and fair dealing, Plaintiffs have suffered damages as described herein.

## COUNT IV
### Violation of G.L. c. 93A

65.    Plaintiffs repeat and reallege the allegations of Paragraphs 1 through 64 as if fully set forth herein.

66.    Plaintiffs and Defendants are each engaged in the conduct of trade and commerce within the meaning of G.L. c. 93A, §1(b).

67.    The above-described conduct of Defendants constitutes unfair and deceptive acts and practices in the conduct of trade or commerce, in violation of G.L. c. 93A, §§ 2 and 11.

68.    The above-described conduct of Defendants occurred primarily and substantially within the Commonwealth of Massachusetts.

69.    As a result of Defendants' wrongful acts and conduct, Plaintiffs have suffered substantial losses as described herein.

70.    Defendants' violations of G.L. c. 93A were willful and/or knowing, and Defendants are therefore liable to Plaintiffs for treble damages, in accordance with G.L. c. 93A, §§ 2 and 11.

71.    Plaintiffs are also entitled to an award of reasonable attorneys' fees and costs incurred in this action as a result of Defendants' violations of G.L. c. 93A, § 2.

WHEREFORE, Plaintiffs respectfully ask this Court to:

1. Enter judgment for Plaintiffs on all counts of this Complaint;

2. Award monetary damages to Plaintiffs in an amount to be proved at trial;

3. Award treble damages to Plaintiffs, as provided by G.L. c. 93A, § 11, for Defendants' violation of G.L. c. 93A, §2;

4. Award Plaintiffs their costs and attorneys' fees; and

5. Award such further relief as the Court deems just and proper.

## JURY DEMAND

PLAINTIFFS DEMAND A TRIAL BY JURY ON ALL COUNTS SO TRIABLE.

Respectfully submitted,

FEENEY BROTHERS EXCAVATION
LLC AND THE FEENEY BROTHERS
EXCAVATION CORPORATION 401(k)
PLAN

By its Attorneys,

Michael Patrick Moore, Jr., BBO# 670323
Donna A. Mizrahi, Esq., BBO# 678412
HEMENWAY & BARNES LLP
75 State Street
Boston, Massachusetts 02109
(617) 227-7940

Dated:   October 12, 2018

13

# EXHIBIT 1



www.adviserinfo.sec.gov

Investment Adviser Representative Public Disclosure Report

# BRIAN FRANCIS MILLER

CRD# 1721961

Report #49128-72070, data current as of Thursday, October 11, 2018.

| Section Title | Page(s) |
|---|---|
| Report Summary | 1 |
| Qualifications | 2 - 3 |
| Registration and Employment History | 4 |



**IAPD Information about Investment Adviser Representatives**

IAPD offers information on all current-and many former-Investment Adviser Representatives. Investors are strongly encouraged to use IAPD to check the background of Investment Adviser Representatives before deciding to conduct, or continue to conduct, business with them.

- **What is included in a IAPD report?**
- IAPD reports for individual Investment Adviser Representatives include information such as employment history, professional qualifications, disciplinary actions, criminal convictions, civil judgments and arbitration awards.

- It is important to note that the information contained in an IAPD report may include pending actions or allegations that may be contested, unresolved or unproven. In the end, these actions or allegations may be resolved in favor of the Investment Adviser Representative, or concluded through a negotiated settlement with no admission or finding of wrongdoing.

- **Where did this information come from?**
- The information contained in IAPD comes from the Investment Adviser Registration Depository (IARD) and FINRA's Central Registration Depository, or CRD®, (see more on CRD below) and is a combination of:

  o information the states require Investment Adviser Representatives and firms to submit as part of the registration and licensing process, and
  o information that state regulators report regarding disciplinary actions or allegations against Investment Adviser Representatives.
  o

- **How current is this information?**
- Generally, Investment Adviser Representatives are required to update their professional and disciplinary information in IARD within 30 days.

- **Need help interpreting this report?**
- For help understanding how to read this report, please consult NASAA's IAPD Tips page http://www.nasaa.org/IAPD/IARReports.cfm.

- **What if I want to check the background of an Individual Broker or Brokerage firm?**
- To check the background of an Individual Broker or Brokerage firm, you can search for the firm or individual in IAPD. If your search is successful, click on the link provided to view the available licensing and registration information in FINRA's BrokerCheck website.

- **Are there other resources I can use to check the background of investment professionals?**
- It is recommended that you learn as much as possible about an individual Investment Adviser Representative or Investment Adviser firm before deciding to work with them. Your state securities regulator can help you research individuals and certain firms doing business in your state. The contact information for state securities regulators can be found on the website of the North American Securities Administrators Association http://www.nasaa.org.



www.adviserinfo.sec.gov

# Investment Adviser Representative Report Summary

## BRIAN FRANCIS MILLER (CRD# 1721961)

The report summary provides an overview of the Investment Adviser Representative's professional background and conduct. The information contained in this report has been provided by the Investment Adviser Representative, investment adviser and/or securities firms, and/or securities regulators as part of the states' investment adviser registration and licensing process. The information contained in this report was last updated by the Investment Adviser Representative, a previous employing firm, or a securities regulator on **08/02/2018**.

## CURRENT EMPLOYERS

**MORGAN STANLEY**
IARD# 149777
53 STATE STREET
BOSTON, MA 02109
Registered with this firm since: 07/05/2018

## QUALIFICATIONS

This Investment Adviser Representative is currently registered in **1** jurisdiction(s).

Is this Investment Adviser Representative currently suspended with any jurisdiction? **No**

**Note:** Not all jurisdictions require IAR registration or may have an exemption from registration.
Additional information including this individual's qualification examinations and professional designations is available in the Detailed Report.

## REGISTRATION HISTORY

This Investment Adviser Representative was previously registered with the following Investment Adviser firms:

No information reported.

For additional registration and employment history details as reported by the individual, refer to the Registration and Employment History section of the Detailed Report.

## DISCLOSURE INFORMATION

Disclosure events include certain criminal charges and convictions, formal investigations and disciplinary actions initiated by regulators, customer disputes and arbitrations, and financial disclosures such as bankruptcies and unpaid judgments or liens.

Are there events disclosed about this Investment Adviser Representative?   **No**



## Investment Adviser Representative Qualifications

## REGISTRATIONS

This section provides the states and U.S. territories in which the Investment Adviser Representative is currently registered and licensed, the category of each registration, and the date on which the registration became effective. This section also provides, for each firm with which the Investment Adviser Representative is currently employed, the address of each location where the Investment Adviser Representative works.

This individual is currently registered with 1 jurisdiction(s) through his or her employer(s).

## Employment 1 of 1

Firm Name:        **MORGAN STANLEY**

Main Address:     2000 WESTCHESTER AVENUE
                  PURCHASE, NY  10577-2530

Firm IARD#:       149777

| U.S. State/ Territory | Status | Date |
| --- | --- | --- |
| Connecticut | Approved | 07/05/2018 |

## Branch Office Locations

**MORGAN STANLEY**
53 STATE STREET
BOSTON, MA  02109



www.adviserinfo.sec.gov

# Investment Adviser Representative Qualifications

## PASSED INDUSTRY EXAMS

This section includes all required state securities exams that the Investment Adviser Representative has passed. Under limited circumstances, an Investment Adviser Representative may attain registration after receiving an exam waiver based on a combination of exams the Investment Adviser Representative has passed and qualifying work experience. Likewise, a new exam requirement may be grandfathered based on an Investment Adviser Representative's specific qualifying work experience. Exam waivers and grandfathering are not included below.

This individual has passed the following exams:

| Exam | Category | Date |
|---|---|---|
| Uniform Securities Agent State Law Examination (S63) | Series 63 | 10/19/1987 |
| Uniform Combined State Law Examination (S66) | Series 66 | 07/05/2018 |

## PROFESSIONAL DESIGNATIONS

This section details that the Investment Adviser Representative has reported **0** professional designation(s).

No information reported.

©2018 FINRA. All rights reserved. Report# 49128-72070 requested on Thursday, October 11, 2018 about BRIAN FRANCIS MILLER.



## Investment Adviser Representative Registration and Employment History

## PREVIOUSLY REGISTERED WITH THE FOLLOWING INVESTMENT ADVISER FIRMS

This section indicates that state registration records show this Investment Adviser Representative previously held registrations with the following firms:

No information reported.

## EMPLOYMENT HISTORY

Below is the Investment Adviser Representative's employment history for up to the last 10 years.

**Please note that the Investment Adviser Representative is required to provide this information only while registered and the information is not updated after the Investment Adviser Representative ceases to be registered, with a state regulator. Therefore, an employment end date of "Present" may not reflect the Investment Adviser Representative's current employment status.**

| Employment Dates | Employer Name | Employer Location |
|---|---|---|
| 01/2015 - Present | MORGAN STANLEY PRIVATE BANK, NATIONAL ASSOCIATION | NEW YORK, NY |
| 06/2009 - Present | MORGAN STANLEY SMITH BARNEY | BOSTON, MA |
| 11/2005 - Present | CITIGROUP GLOBAL MARKETS INC. | BOSTON, MA |

## OTHER BUSINESS ACTIVITIES

This section includes information, if any, as provided by the Investment Adviser Representative regarding other business activities the Investment Adviser Representative is currently engaged in either as a proprietor, partner, officer, director, employee, trustee, agent, or otherwise. This section does not include non-investment related activity that is exclusively charitable, civic, religious, or fraternal and is recognized as tax exempt.

No information reported.



www.adviserinfo.sec.gov

**End of Report**

This page is intentionally left blank.

| CIVIL ACTION COVER SHEET | DOCKET NUMBER | Trial Court of Massachusetts<br>The Superior Court |
|---|---|---|

| PLAINTIFF(S): | Feeney Brothers Excavation LLC | | COUNTY | Suffolk |
|---|---|---|---|---|

**ADDRESS:** and Feeney Brothers Excavation Corporation 401(k) Plan

**DEFENDANT(S):** Morgan Stanley & Co., LLC, Morgan Stanley Private Bank, N.A.,

Morgan Stanley Smith Barney LLC and Brian F. Miller

**ATTORNEY:** M. Patrick Moore, Esq./Donna A. Mizrahi, Esq.

**ADDRESS:** . Hemenway & Barnes LLP, 75 State Street

Boston, MA 02109

**ADDRESS:**

**BBO:** 670323/678412

## TYPE OF ACTION AND TRACK DESIGNATION (see reverse side)

| CODE NO. | TYPE OF ACTION (specify) | TRACK | HAS A JURY CLAIM BEEN MADE? |
|---|---|---|---|
| A99/B99 | Contract/Business Action/Tortious Action | F | ☒ YES ☐ NO |

*If "Other" please describe:    Negligent misrepresentation; fraudulent inducement; G.L. c. 93A

## STATEMENT OF DAMAGES PURSUANT TO G.L. c. 212, § 3A

The following is a full, itemized and detailed statement of the facts on which the undersigned plaintiff or plaintiff counsel relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

### TORT CLAIMS
(attach additional sheets as necessary)

A. Documented medical expenses to date:
   1. Total hospital expenses ................................................................................................ $ _____
   2. Total doctor expenses .................................................................................................. $ _____
   3. Total chiropractic expenses ......................................................................................... $ _____
   4. Total physical therapy expenses ................................................................................. $ _____
   5. Total other expenses (describe below) ....................................................................... $ _____
                                                                       Subtotal (A): $ _____

B. Documented lost wages and compensation to date ........................................................ $ _____
C. Documented property damages to dated ......................................................................... $ _____
D. Reasonably anticipated future medical and hospital expenses ...................................... $ _____
E. Reasonably anticipated lost wages ................................................................................. $ _____
F. Other documented items of damages (describe below) ................................................... $ _____

G. Briefly describe plaintiff's injury, including the nature and extent of injury:

                                                                       TOTAL (A-F):$ _____

### CONTRACT CLAIMS
(attach additional sheets as necessary)

Provide a detailed description of claims(s):

Contract/Tort Combined TOTAL: $ 1 Million+

**Signature of Attorney/Pro Se Plaintiff:** X _Donna A. Mizrahi_    **Date:** 10/12/2018

**RELATED ACTIONS:** Please provide the case number, case name, and county of any related actions pending in the Superior Court.

## CERTIFICATION PURSUANT TO SJC RULE 1:18

I hereby certify that I have complied with requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods of dispute resolution. ...

**Signature of Attorney of Record:** X _Donna J. Mizrahi_    **Date:** 10/12/2018

| CIVIL TRACKING ORDER<br>(STANDING ORDER 1- 88) | DOCKET NUMBER<br>1884CV03183 | Trial Court of Massachusetts<br>The Superior Court |
|---|---|---|
| CASE NAME:<br>Feeney Brothers Excavation LLC et al vs. Morgan Stanley & Co LLC et al | | Michael Joseph Donovan, Clerk of Court |
| TO:<br><br>, | | COURT NAME & ADDRESS<br>Suffolk County Superior Court - Civil<br>Suffolk County Courthouse, 12th Floor<br>Three Pemberton Square<br>Boston, MA 02108 |

## TRACKING ORDER - F - Fast Track

You are hereby notified that this case is on the track referenced above as per Superior Court Standing Order 1-88. The order requires that the various stages of litigation described below must be completed not later than the deadlines indicated.

**STAGES OF LITIGATION** . **DEADLINE**

| | SERVED BY | FILED BY | HEARD BY |
|---|---|---|---|
| Service of process made and return filed with the Court | | 01/10/2019 | |
| Response to the complaint filed (also see MRCP 12) | | 02/11/2019 | |
| All motions under MRCP 12, 19, and 20 | 02/11/2019 | 03/11/2019 | 04/10/2019 |
| All motions under MRCP 15 | 02/11/2019 | 03/11/2019 | 04/10/2019 |
| All discovery requests **and depositions** served and non-expert depositions completed | 08/08/2019 | | . |
| All motions under MRCP 56 | 09/09/2019 | 10/07/2019 | |
| Final pre-trial conference held and/or firm trial date set | | | 02/04/2020 |
| Case shall be resolved and judgment shall issue by | | | 10/12/2020 |

The final pre-trial deadline is **not the scheduled date of the conference**. You will be notified of that date at a later time.

**Counsel for plaintiff must serve this tracking order on defendant before the deadline for filing return of service.**

This case is assigned to

| DATE ISSUED<br>**10/12/2018** | ASSISTANT CLERK<br>**Jane M Mahon** | PHONE<br>**(617)788-8110** |
|---|---|---|

Date/Time Printed: 10-12-2018 12:24:37

SCV026\ 08/2018

 CT Corporation

**Service of Process Transmittal**
10/15/2018
CT Log Number 534228774

**TO:**   Erin Law
        Morgan Stanley Law Division
        1633 Broadway, 26th Fl
        New York, NY 10019

**RE:**   **Process Served in Massachusetts**

**FOR:**  Morgan Stanley & Co. LLC  (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | FEENEY BROTHERS EXCAVATION LLC and FEENEY BROTHERS EXCAVATION CORPORATION, etc., Pltfs. vs. MORGAN STANLEY & CO. LLC, et al., Dfts. |
| **DOCUMENT(S) SERVED:** | Summons, Complaint, Exhibit(s) |
| **COURT/AGENCY:** | COMMONWEALTH OF MASSACHUSETTS - SUPERIOR COURT DEPARTMENT, MA<br>Case # 1884CV03183D |
| **NATURE OF ACTION:** | Breach of the Covenant of Good Faith and Fair Dealing |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Boston, MA |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 10/15/2018 at 09:00 |
| **JURISDICTION SERVED :** | Massachusetts |
| **APPEARANCE OR ANSWER DUE:** | Within 20 days |
| **ATTORNEY(S) / SENDER(S):** | Donna A. Mizrahi<br>HEMEN WAY & BARNES LLP<br>75 State Street<br>Boston, MA 02109<br>617-227-7940 |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 10/16/2018, Expected Purge Date: 11/15/2018 |
| | Image SOP |
| | Email Notification,  Andrea Carty-Abrahams  Andrea.Carty@morganstanley.com |
| | Email Notification,  Adeleke Berry  addy.berry@morganstanley.com |
| | Email Notification,  Veronica Castro  Veronica.Castro@morganstanley.com |
| | Email Notification,  Jessica Bradshaw  Jessica.bradshaw@morganstanley.com |
| | Email Notification,  Mary Beth Trevino  trevinob@saxonmsi.com |
| | Email Notification,  Erin Law  Erin.Law@morganstanley.com |
| | Email Notification,  Elizabeth Waggoner  Elizabeth.Waggoner@morganstanley.com |

Page 1 of  2 / JK

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

 CT Corporation

**Service of Process Transmittal**
10/15/2018
CT Log Number 534228774

**TO:**    Erin Law
Morgan Stanley Law Division
1633 Broadway, 26th Fl
New York, NY 10019

**RE:**    **Process Served in Massachusetts**

**FOR:**    Morgan Stanley & Co. LLC  (Domestic State: DE)

Email Notification,  Lawrence Barbot  Lawrence.Barbot@morganstanley.com

Email Notification,  Lenise Davis  lenise.davis@morganstanley.com

Email Notification,  Jyotsna Rasam  Jyotsna.Rasam@morganstanley.com

Email Notification,  Marina Aminov  marina.aminov@morganstanley.com

Email Notification,  Gwanda Brown  Gwanda.v.brown@morganstanley.com

Email Notification,  Tahitia Martin  Tahitia.Martin@morganstanley.com

Email Notification,  Diane L. Gray  Diane.L.Gray@morganstanley.com

Email Notification,  Ishwar Ingle  Ishwar.Ingle@morganstanley.com

Email Notification,  Bhakti Rasal  Bhakti.Rasal@morganstanley.com

Email Notification,  CHRISTINE PINTO  christine.pinto@morganstanley.com

**SIGNED:**    C T Corporation System
**ADDRESS:**    155 Federal St Ste 700
Boston, MA 02110-1727
**TELEPHONE:**    617-757-6404

Page 2 of  2 / JK

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

# Commonwealth of Massachusetts

SUFFOLK, SS.

TRIAL COURT OF THE COMMONWEALTH
SUPERIOR COURT DEPARTMENT
CIVIL DOCKET NO.  1884CV03183D

FEENEY BROTHERS EXCAVATION, LLC
AND FEENEY BROTHERS
~~EXCAVATION CORPORATION 401(k) PLAN~~, PLAINTIFF(S)

v.

MORGAN STANLEY & CO. LLC,
~~MORGAN STANLEY PRIVATE~~, DEFENDANT(S)
BANK, N.A., MORGAN STANLEY
SMITH BARNEY LLC AND BRIAN F. MILLER

SUMMONS

THIS SUMMONS IS DIRECTED TO MORGAN STANLEY & CO. LLC . (Defendant's name)

You are being sued. The Plaintiff(s) named above has started a lawsuit against you. A copy of the Plaintiff's Complaint filed against you is attached to this summons and the original complaint has been filed in the Suffolk Superior Court. YOU MUST ACT PROMPTLY TO PROTECT YOUR RIGHTS.

1.  You must respond to this lawsuit in writing within 20 days. If you do not respond, the court may decide the case against you and award the Plaintiff everything asked for in the complaint. You will also lose the opportunity to tell your side of the story. You must respond to this lawsuit in writing even if you expect to resolve this matter with the Plaintiff. If you need more time to respond, you may request an extension of time in writing from the Court.

2.  How to Respond. To respond to this lawsuit, you must file a written response with the court and mail a copy to the Plaintiff's Attorney (or the Plaintiff, if unrepresented). You can do this by:

   a.  Filing your signed original response with the Clerk's Office for Civil Business, Suffolk Court, 3 Pemberton Sq. Boston, MA 02108 (address), by mail or in person, AND

   b.  Delivering or mailing a copy of your response to the Plaintiff's Attorney/Plaintiff at the following address: Hemenway & Barnes LLP, 75 State St., 16th Floor, Boston, MA 02109

3.  What to include in your response. An "Answer" is one type of response to a Complaint. Your Answer must state whether you agree or disagree with the fact(s) alleged in each paragraph of the Complaint. Some defenses, called affirmative defenses, must be stated in your Answer or you may lose your right to use them in court. If you have any claims against the Plaintiff (referred to as counterclaims) that are based on the same facts or transaction described in the Complaint, then you must include those claims in your Answer. Otherwise, you may lose your right to sue the Plaintiff about anything related to this lawsuit. If you want to have your case heard by a jury, you must specifically request a jury trial in your Answer or in a written demand for a jury trial that you must send to the other side and file with the court no more than 10 days after sending your Answer. You can also respond to a Complaint by filing a "Motion to Dismiss," if you believe that the complaint is legally invalid or legally insufficient. A Motion to Dismiss must be based on one of the legal deficiencies or reasons listed under Mass. R. Civ. P. 12. If you are filing a Motion to Dismiss, you must also comply with the filing procedures for "Civil Motions" described in the rules of the Court in which the complaint was filed, available at www.mass.gov.courts/case-legal-res/rules of court.

Joseph P Casey

A true copy Attest.

Deputy Sheriff Suffolk County

10-15-18

4.  **Legal Assistance.** You may wish to get legal help from a lawyer. If you cannot get legal help, some basic information for people who represent themselves is available at www.mass.gov/courts/selfhelp.

5.  **Required information on all filings:** The "civil docket number" appearing at the top of this notice is the case number assigned to this case and must appear on the front of your Answer or Motion to Dismiss. You should refer to yourself as the "Defendant."

Witness Hon. Judith Fabricant, Chief Justice on _____, 20____.

*Michael Joseph Donovan*

Michael Joseph Donovan
Clerk-Magistrate

Note: The number assigned to the Complaint by the Clerk-Magistrate at the beginning of the lawsuit should be indicated on the summons before it is served on the Defendant.

## PROOF OF SERVICE OF PROCESS

I hereby certify that on _____, 20____, I served a copy of this summons, together with a copy of the complaint in this action, on the defendant named in this summons, in the following manner (See Mass. R. Civ. P. 4 (d)(1-5)):

_____

_____

_____

Dated: _____, 20____     Signature: _____

**N.B.   TO PROCESS SERVER:**

PLEASE ENTER THE DATE THAT YOU MADE SERVICE ON THE DEFENDANT IN THIS BOX — BOTH ON THE ORIGINAL SUMMONS AND ON THE COPY OF THE SUMMONS SERVED ON THE DEFENDANT.

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss                                    SUPERIOR COURT DEPARTMENT
                                               CIVIL ACTION NO.

| | |
|---|---|
| FEENEY BROTHERS EXCAVATION LLC AND FEENEY BROTHERS EXCAVATION CORPORATION 401(k) PLAN<br><br>      Plaintiffs<br><br>v.<br><br>MORGAN STANLEY & CO. LLC, MORGAN STANLEY PRIVATE BANK, N.A., MORGAN STANLEY SMITH BARNEY LLC, AND BRIAN F. MILLER<br><br>      Defendants | |

## COMPLAINT

By this action, plaintiffs Feeney Brothers Excavation LLC ("Feeney Brothers") and the Feeney Brothers Excavation Corporation 401(k) Plan (the "Plan") seek damages from defendants Morgan Stanley & Co. LLC, Morgan Stanley Private Bank, N.A., Morgan Stanley Smith Barney LLC (collectively "Morgan Stanley") and Brian F. Miller ("Miller"), an investment adviser employed by Morgan Stanley, arising out of Miller's representations concerning Qualified Pension Services, Inc. ("QPSI") and his recommendation that Feeney Brothers hire QPSI to serve as the Plan's third-party administrator ("TPA").

Despite Miller's representations, QPSI was not qualified to serve as the Plan's TPA when it was hired, and it became even more ill-suited to serve as TPA as the number of Plan participants grew. In fact, QPSI made two significant errors in administering the Plan – discovered through audits in 2015 and 2016 – which Feeney Brothers and the Plan were required

1

to remedy. Feeney Brothers and the Plan have sustained more than $1 million in losses in total to pay additional Plan contributions required by the IRS, as well as attorneys' fees, in-house staff time, successor TPA fees, accountant fees, and IRS fees to address the errors. These damages were the result of Miller's recommendation to hire QPSI, and the negligent misrepresentations he made in connection with that recommendation, which resulted in Feeney Brothers being fraudulently induced to enter a contract with Miller and Morgan Stanley. Miller's conduct also breached the covenant of good faith and fair dealing and failed to comport with the prohibition on unfair and deceptive trade practices established by Chapter 93A.

## PARTIES

1.    Plaintiff Feeney Brothers is a limited liability company organized under the laws of the Commonwealth of Massachusetts and having a principal place of business of 103 Clayton Street, Dorchester, MA 02122.

2.    Plaintiff the Plan is the 401(k) plan provided to Feeney Brothers employees. The Plan is administered at Feeney Brothers' principal place of business, 103 Clayton Street, Dorchester, MA 02122.

3.    Defendant Morgan Stanley & Co. LLC is a limited liability company organized under the laws of the state of Delaware with its principal place of business located at 1585 Broadway Avenue, New York, NY 10036. In Massachusetts, Morgan Stanley & Co. LLC's principal place of business is 1 International Place, 13th Floor, Boston, MA 02110.

4.    Defendant Morgan Stanley Smith Barney LLC is a limited liability company organized under the laws of the state of Delaware with its principal place of business located at 1585 Broadway Avenue, New York, NY 10036. Morgan Stanley Smith Barney LLC is registered to do business in the Commonwealth of Massachusetts.

2

5.     Defendant Morgan Stanley Private Bank, N.A. is a national bank with its principal place of business at 2000 Westchester Avenue, Purchase, NY, 10577.  Morgan Stanley Private Bank, N.A. is listed as Defendant Miller's current employer, with a branch office location located at 53 State Street, Boston, MA 02109.  *See* Exhibit 1 (SEC Investment Adviser Representative Public Disclosure Report of Brian Francis Miller).

6.     Defendant Morgan Stanley & Co. LLC, Defendant Morgan Stanley Smith Barney LLC, and Defendant Morgan Stanley Private Bank, N.A., including predecessor entities of each of the foregoing, will be referenced collectively as "Morgan Stanley."

7.     Defendant Brian F. Miller ("Miller") is an individual employed by or otherwise affiliated with Morgan Stanley as a First Vice President, Financial Advisor, & Corporate Retirement Director.  More specifically, according to the SEC Investment Adviser Representative Public Disclosure Report of Brian Francis Miller, Miller worked at Morgan Stanley Smith Barney LLC beginning in June 2009, and Morgan Stanley Private Bank, N.A. beginning in 2015.  He continues to be employed by Morgan Stanley, and his current business address is 53 State Street, Boston, MA  02109.  *See* Exhibit 1 (SEC Investment Adviser Representative Public Disclosure Report of Brian Francis Miller).  According to Miller's publicly available biography, he has worked for or been affiliated with Morgan Stanley (or a predecessor entity) since 1987.

## FACTS

### Background

8.     Feeney Brothers was founded by two brothers in 1988 as a utility construction company and today is a leading service provider for the natural gas, electric, and telecommunications industries throughout New England.

3

9.    The Plan is the 401(k) plan Feeney Brothers offers its employees for retirement savings.

10.    Morgan Stanley is a multinational investment bank and financial services company. Among other business lines, Morgan Stanley provides investment advice to individual clients (including Plaintiffs). For the second quarter ending June 30, 2018, Morgan Stanley earned over $10.6 billion in net revenue, reflecting $691 million in net revenue for its investment management services, with $474 billion assets under management.

11.    Miller, who has been employed by Morgan Stanley since 1987, works as a First Vice President, Financial Advisor, and Corporate Retirement Director at Morgan Stanley.

12.    In or about 2009, the Plan retained Miller (and Morgan Stanley) as its investment advisor.

13.    At or near the same time, Feeney Brothers and the Plan also retained QPSI as the Plan's third-party administrator ("TPA"), based on Miller's recommendation that it do so.

14.    In discussions with Feeney Brothers, Miller stressed his expertise in assisting 401(k) plans — not just by providing investment advice, but also by ensuring that the Plan's administrative and regulatory needs were met by capable TPAs. In that context, Miller represented to Feeney Brothers that QPSI had the aptitude, ability, and expertise to administer the Plan. Miller expressly recommended that, on the basis of his representations concerning QPSI's representations, Feeney Brothers and the Plan retain QPSI as the Plan's TPA.

15.    QPSI was the only TPA about which Miller made such a representation and it was the only TPA Miller advised Feeney Brothers to hire.

4

16.     In recommending Plaintiffs hire QPSI as the Plan's TPA and making representations in connection with that recommendation, Miller was acting within the scope of his employment at Morgan Stanley.

17.     At the time Feeney Brothers retained QPSI, it maintained a relatively small finance department with limited experience in 401(k) plan administration.  Miller knew this fact, and marketed his services with it in mind:  as someone capable of meeting all needs arising from the Plan, either personally or through recommendations to what he purported to be qualified third-parties.

18.     In reliance upon Miller's expertise and advice, Feeney Brothers hired QPSI as the Plan's TPA.

19.     QPSI, however, was not qualified to be the Plan's TPA.  QPSI's business focused exclusively on the administration of small 401(k) plans, and QPSI was not equipped to handle the mid-sized and growing Plan.

20.     Miller knew or should have known that QPSI was not equipped to serve as Feeney Brother's TPA because, among other things, the Plan was larger than most plans administered by QPSI; QPSI lacked the aptitude, qualifications and experience to meet the Plan's needs; and those needs would grow only more complex and demanding as the Plan grew, rendering QPSI even more poorly suited for the TPA role.

21.     Instead Miller represented to Feeney Brothers and the Plan that QPSI ably provided services to other 401(k) plans with which Miller worked.  Miller did not mention, however, that those plans were quite small, with needs far different than those of the Plan.

22.     Miller also represented to Feeney Brothers and the Plan that Miller knew and trusted QPSI's principal, Richard "Dick" Etling; Miller did not disclose, however, that Etling's business model focused exclusively on plans much smaller than the Plan.

23.     Moreover, and perhaps reflective of its small-plan client base, QPSI carried no insurance to protect it against losses caused by its failure to perform its duties as a TPA, a fact which Miller knew or at a minimum should have known, but which was not disclosed to Feeney Brothers.

24.     When Miller pitched Feeney Brothers to hire him and Morgan Stanley to become the investment advisor to the Plan, Miller did so as part of a package. He estimated the cost of his investment advisory services together with other administrative services (i.e., those of QPSI and those of the platform through which the Plan would be administered), and presented everything packaged into one price. QPSI's TPA services were relatively low cost, making Miller's pitch to become the investment advisor to the Plan more attractive.

25.     Over recent years, as Feeney Brothers grew, so too did the number of Plan participants. Miller and Morgan Stanley knew these facts well because, as investment advisor to the Plan, Miller and Morgan Stanley benefited from them in the form of ever-increasing fees.

26.     But as the Plan grew in size, QPSI became even less qualified to serve as its TPA. Of QPSI's approximately 300 clients, the Plan was its largest — by far.

27.     In fact, of QPSI's 300 clients, no more than a handful were 401(k) plans with more than 20 participants; in recent years, the Plan has had substantially more than 100 participants.

28.    In addition, QPSI provided TPA services exclusively to 401(k) plans that were not "large plans," i.e., those that were below the 100-participant threshold that under federal regulations triggers an annual public accounting audit of the Plan.

29.    For several years before 2014, the Plan neared the 100-participant threshold (as defined in federal regulations), and in 2014, the Plan crossed that threshold. QPSI had no experience with administering a plan of that size and so notified Miller.

30.    Though Miller was aware of QPSI's unsuitability to administer the Plan, Miller did not share that information with Plaintiffs and instead continued to recommend QPSI and package QPSI's services with Miller's own.

### Losses Incurred by the Plan & Feeney Brothers

31.    Feeney Brothers became aware of QPSI's inability to meet reasonable standards of professional diligence only following audits of the Plan completed in mid-October 2015 and mid-October 2016, respectively.

32.    The 2015 audit determined that an error had occurred when QPSI used its template documents to restate the Plan. Feeney Brothers had approved QPSI's request to use its template documents under one condition: that they not alter any material provision of the Plan (including without limitation that bonus compensation not fall within the Plan's definition of "compensation").

33.    Under the Plan as it existed before QPSI's use of its template documents, if Plan participants wanted to include cash bonuses in "compensation" for purposes of elective deferrals and matching contributions, they were required to make an affirmative election to do so. QPSI's restatement of the plan, however, included bonuses in "compensation," whether or not a Plan participant affirmatively elected to include bonuses.

7

34.    QPSI did not inform Feeney Brothers of the resulting change to the Plan document, leaving the company unaware that it had occurred.

35.    Upon discovering the error in October 2015, Feeney Brothers immediately began operating the Plan in compliance with the terms as QPSI had restated them (i.e., by calculating elective deferrals and matching contributions using a definition of "compensation" that includes bonuses).  In addition, Feeney Brothers incurred substantial legal fees to file an application to the IRS's Voluntary Correction Program to address and resolve the issue.

36.    The 2016 audit identified erroneous guidance provided to Feeney Brothers with respect to profit-sharing contributions to the Plan.  Federal rules require nondiscrimination between highly compensated employees ("HCEs") and non-highly compensated employees ("NHCEs") in connection with profit sharing contributions.  In 2010, based on guidance provided by QPSI, Feeney Brothers amended the Plan to alter its profit sharing contributions.  QPSI committed to perform the nondiscrimination tests associated with the altered contributions.

37.    However, the 2016 audit uncovered that the Plan amendments designed by QPSI and the nondiscrimination tests administered by it were defective and inconsistent with federal nondiscrimination rules.  To remedy this issue, Feeney Brothers again had to apply to the IRS's Voluntary Correction Program.

38.    All told, Miller's recommendation to hire QPSI and QPSI's substandard performance caused Feeney Brothers to incur the following damages:  $676,950 in additional Plan contributions required by the IRS; more than $175,000 in attorneys' fees to remedy Plan defects and work with the IRS to achieve compliance through the Voluntary Correction Program; approximately $100,000 in Feeney Brothers in-house staff time to prepare the Voluntary Correction Program submission and remedy Plan defects; $50,845 in successor TPA fees for

8

time devoted to remedying the Plan defects; $12,000 to accountants to identify and address the Plan defects; and $7,500 in fees to the IRS for participation in the Voluntary Correction Program. In sum, Feeney Brothers and the Plan have sustained more than $1 million in losses.

## COUNT I
### Negligent Misrepresentation

39. Plaintiffs repeat and reallege the allegations of Paragraphs 1 through 38 as if fully set forth herein.

40. At the time Miller and Morgan Stanley were hired to provide investment advice to the Plan, Miller made inaccurate representations concerning QPSI, its aptitude and expertise, and its suitability to provide TPA services to the Plan.

41. In making those representations, Miller held himself out as an expert, and invited Feeney Brothers — which, at the time, had a small finance department, and limited 401(k)-related experience — to rely upon Miller's expertise. Miller advised Feeney Brothers and the Plan to retain QPSI and only QPSI.

42. In reasonable reliance on Miller's expertise, representations, and recommendation, Feeney Brothers and the Plan then retained QPSI.

43. In the years that followed, QPSI's unsuitability as a TPA for the Plan increased as the number of participants in the Plan grew.

44. Nevertheless, Miller praised the work of QPSI, continued to recommend its services, and never raised any concerns regarding its ability to administer a growing Plan.

45. But for Miller's representations and advice, neither Feeney Brothers nor the Plan would have retained QPSI; nor would either entity have believed that QPSI had the professional capacity to do the work for which it was hired.

9

46.     Feeney Brothers and the Plan were damaged as a direct and proximate result of Miller's negligent misrepresentations as described herein.

## COUNT II
### Fraudulent Inducement

47.     Plaintiffs repeat and reallege the allegations of Paragraphs 1 through 46 as if fully set forth herein.

48.     When Miller pitched Feeney Brothers and the Plan to hire him and Morgan Stanley as investment advisor to the Plan, Miller presented his services as part of a package with those of QPSI and those of the platform provider.

49.     In so doing, Miller provided an estimated total cost for annual services. That cost was artificially low, because Miller had recommended a TPA on the basis of cost rather than qualifications, aptitude, and ability.

50.     Miller knew or should have known that QPSI was not qualified to serve as the Plan's TPA.

51.     Relying on Miller's expertise and representations regarding QPSI's aptitude, Feeney Brothers and the Plan retained Miller's and Morgan Stanley's services and those of QPSI as part of the package that Miller had presented.

52.     Accordingly, Miller made material misrepresentations, which benefited Miller and Morgan Stanley in the form of investment advisory fees, but which did not benefit the Plan (as it was left with an unsuitable TPA).

53.     As a direct and proximate result of these representations by Miller (made within the scope of his employment at Morgan Stanley), Plaintiffs have suffered damages as described herein.

10

## COUNT III
### Breach of the Covenant of Good Faith and Fair Dealing

54.     Plaintiffs repeat and reallege the allegations of Paragraphs 1 through 53 as if fully set forth herein.

55.     Feeney Brothers and the Plan contracted with Miller and Morgan Stanley to provide investment advisory services to support the Plan and its participants.

56.     In every contract, there is an implied covenant that the parties shall act in good faith, deal fairly with one another, and not undertake efforts that would deprive the other of the benefits of their contract.

57.     At all times, Plaintiffs acted in good faith and dealt fairly with Defendants in connection with their rights and obligations pursuant to the parties' contract.

58.     Defendants, however, did not act in good faith or deal fairly with Plaintiffs.

59.     Miller knew that QPSI was providing administrative services that it was ill-equipped to provide, thereby potentially damaging the Plan and compromising its assets.

60.     Miller also knew, or at a minimum should have known, that QPSI did not carry insurance to cover any losses caused by its failure to perform its duties as a TPA.

61.     Miller did not raise these concerns; nor did Miller share his knowledge that QPSI typically works with much smaller clients.

62.     When comprehensive audits were undertaken in 2015 and 2016, they uncovered the considerable consequences of QPSI's inaptitude.

63.     As a result of Defendants' bad faith and unfair dealing, Defendants benefitted from this contract, receiving investment advisory fees, but deprived Plaintiffs of the benefits they were entitled to receive under the parties' contract.

11

64.     As a direct and proximate result of Defendants' breaches of the implied covenant of good faith and fair dealing, Plaintiffs have suffered damages as described herein.

## COUNT IV
### Violation of G.L. c. 93A

65.     Plaintiffs repeat and reallege the allegations of Paragraphs 1 through 64 as if fully set forth herein.

66.     Plaintiffs and Defendants are each engaged in the conduct of trade and commerce within the meaning of G.L. c. 93A, §1(b).

67.     The above-described conduct of Defendants constitutes unfair and deceptive acts and practices in the conduct of trade or commerce, in violation of G.L. c. 93A, §§ 2 and 11.

68.     The above-described conduct of Defendants occurred primarily and substantially within the Commonwealth of Massachusetts.

69.     As a result of Defendants' wrongful acts and conduct, Plaintiffs have suffered substantial losses as described herein.

70.     Defendants' violations of G.L. c. 93A were willful and/or knowing, and Defendants are therefore liable to Plaintiffs for treble damages, in accordance with G.L. c. 93A, §§ 2 and 11.

71.     Plaintiffs are also entitled to an award of reasonable attorneys' fees and costs incurred in this action as a result of Defendants' violations of G.L. c. 93A, § 2.

12

WHEREFORE, Plaintiffs respectfully ask this Court to:

1.  Enter judgment for Plaintiffs on all counts of this Complaint;

2.  Award monetary damages to Plaintiffs in an amount to be proved at trial;

3.  Award treble damages to Plaintiffs, as provided by G.L. c. 93A, § 11, for Defendants' violation of G.L. c. 93A, §2;

4.  Award Plaintiffs their costs and attorneys' fees; and

5.  Award such further relief as the Court deems just and proper.

## JURY DEMAND

PLAINTIFFS DEMAND A TRIAL BY JURY ON ALL COUNTS SO TRIABLE.

Respectfully submitted,

FEENEY BROTHERS EXCAVATION
LLC AND THE FEENEY BROTHERS
EXCAVATION CORPORATION 401(k)
PLAN

By its Attorneys,

Michael Patrick Moore, Jr., BBO# 670323
Donna A. Mizrahi, Esq., BBO# 678412
HEMENWAY & BARNES LLP
75 State Street
Boston, Massachusetts 02109
(617) 227-7940

Dated:    October 12, 2018

13

# EXHIBIT 1



www.adviserinfo.sec.gov

## Investment Adviser Representative Public Disclosure Report

# BRIAN FRANCIS MILLER

CRD# 1721961

Report #49128-72070, data current as of Thursday, October 11, 2018.

| Section Title | Page(s) |
| --- | --- |
| Report Summary | 1 |
| Qualifications | 2 - 3 |
| Registration and Employment History | 4 |



www.adviserinfo.sec.gov

**IAPD Information about Investment Adviser Representatives**

IAPD offers information on all current-and many former-Investment Adviser Representatives. Investors are strongly encouraged to use IAPD to check the background of Investment Adviser Representatives before deciding to conduct, or continue to conduct, business with them.

- **What is included in a IAPD report?**
- IAPD reports for individual Investment Adviser Representatives include information such as employment history, professional qualifications, disciplinary actions, criminal convictions, civil judgments and arbitration awards.

- It is important to note that the information contained in an IAPD report may include pending actions or allegations that may be contested, unresolved or unproven. In the end, these actions or allegations may be resolved in favor of the Investment Adviser Representative, or concluded through a negotiated settlement with no admission or finding of wrongdoing.

- **Where did this information come from?**
- The information contained in IAPD comes from the Investment Adviser Registration Depository (IARD) and FINRA's Central Registration Depository, or CRD®, (see more on CRD below) and is a combination of:

  - o information the states require Investment Adviser Representatives and firms to submit as part of the registration and licensing process, and
  - o information that state regulators report regarding disciplinary actions or allegations against Investment Adviser Representatives.
  - o
- **How current is this information?**
- Generally, Investment Adviser Representatives are required to update their professional and disciplinary information in IARD within 30 days.

- **Need help interpreting this report?**
- For help understanding how to read this report, please consult NASAA's IAPD Tips page http://www.nasaa.org/IAPD/IARReports.cfm.

- **What if I want to check the background of an Individual Broker or Brokerage firm?**
- To check the background of an Individual Broker or Brokerage firm, you can search for the firm or individual in IAPD. If your search is successful, click on the link provided to view the available licensing and registration information in FINRA's BrokerCheck website.

- **Are there other resources I can use to check the background of investment professionals?**
- It is recommended that you learn as much as possible about an individual Investment Adviser Representative or Investment Adviser firm before deciding to work with them. Your state securities regulator can help you research individuals and certain firms doing business in your state. The contact information for state securities regulators can be found on the website of the North American Securities Administrators Association http://www.nasaa.org.



www.adviserinfo.sec.gov

## Investment Adviser Representative Report Summary

## BRIAN FRANCIS MILLER (CRD# 1721961)

The report summary provides an overview of the Investment Adviser Representative's professional background and conduct. The information contained in this report has been provided by the Investment Adviser Representative, investment adviser and/or securities firms, and/or securities regulators as part of the states' investment adviser registration and licensing process. The information contained in this report was last updated by the Investment Adviser Representative, a previous employing firm, or a securities regulator on **08/02/2018**.

## CURRENT EMPLOYERS

**MORGAN STANLEY**
IARD# 149777
53 STATE STREET
BOSTON, MA  02109
Registered with this firm since: 07/05/2018

## QUALIFICATIONS

This Investment Adviser Representative is currently registered in **1** jurisdiction(s).

Is this Investment Adviser Representative currently suspended with any jurisdiction? **No**

**Note:** Not all jurisdictions require IAR registration or may have an exemption from registration.
Additional information including this individual's qualification examinations and professional designations is available in the Detailed Report.

## REGISTRATION HISTORY

This Investment Adviser Representative was previously registered with the following Investment Adviser firms:

No information reported.

For additional registration and employment history details as reported by the individual, refer to the Registration and Employment History section of the Detailed Report.

## DISCLOSURE INFORMATION

Disclosure events include certain criminal charges and convictions, formal investigations and disciplinary actions initiated by regulators, customer disputes and arbitrations, and financial disclosures such as bankruptcies and unpaid judgments or liens.

Are there events disclosed about this Investment Adviser Representative?     **No**

©2018 FINRA. All rights reserved. Report# 49128-72070 requested on Thursday, October 11, 2018 about BRIAN FRANCIS MILLER.



# Investment Adviser Representative Qualifications

## REGISTRATIONS

This section provides the states and U.S. territories in which the Investment Adviser Representative is currently registered and licensed, the category of each registration, and the date on which the registration became effective. This section also provides, for each firm with which the Investment Adviser Representative is currently employed, the address of each location where the Investment Adviser Representative works.

This individual is currently registered with **1** jurisdiction(s) through his or her employer(s).

## Employment 1 of 1

| | |
|---|---|
| Firm Name: | **MORGAN STANLEY** |
| Main Address: | 2000 WESTCHESTER AVENUE<br>PURCHASE, NY  10577-2530 |
| Firm IARD#: | 149777 |

| U.S. State/ Territory | Status | Date |
|---|---|---|
| Connecticut | Approved | 07/05/2018 |

## Branch Office Locations

**MORGAN STANLEY**
53 STATE STREET
BOSTON, MA  02109

©2018 FINRA. All rights reserved. Report# 49128-72070 requested on Thursday, October 11, 2018 about BRIAN FRANCIS MILLER.



# Investment Adviser Representative Qualifications

## PASSED INDUSTRY EXAMS

This section includes all required state securities exams that the Investment Adviser Representative has passed. Under limited circumstances, an Investment Adviser Representative may attain registration after receiving an exam waiver based on a combination of exams the Investment Adviser Representative has passed and qualifying work experience. Likewise, a new exam requirement may be grandfathered based on an Investment Adviser Representative's specific qualifying work experience. Exam waivers and grandfathering are not included below.

This individual has passed the following exams:

| Exam | Category | Date |
|---|---|---|
| Uniform Securities Agent State Law Examination (S63) | Series 63 | 10/19/1987 |
| Uniform Combined State Law Examination (S66) | Series 66 | 07/05/2018 |

## PROFESSIONAL DESIGNATIONS

This section details that the Investment Adviser Representative has reported **0** professional designation(s).

No information reported.

©2018 FINRA. All rights reserved. Report# 49128-72070 requested on Thursday, October 11, 2018 about BRIAN FRANCIS MILLER.



<u>www.adviserinfo.sec.gov</u>

## Investment Adviser Representative Registration and Employment History

## PREVIOUSLY REGISTERED WITH THE FOLLOWING INVESTMENT ADVISER FIRMS

This section indicates that state registration records show this Investment Adviser Representative previously held registrations with the following firms:

No information reported.

## EMPLOYMENT HISTORY

Below is the Investment Adviser Representative's employment history for up to the last 10 years.

**Please note that the Investment Adviser Representative is required to provide this information only while registered and the information is not updated after the Investment Adviser Representative ceases to be registered, with a state regulator. Therefore, an employment end date of "Present" may not reflect the Investment Adviser Representative's current employment status.**

| Employment Dates | Employer Name | Employer Location |
|---|---|---|
| 01/2015 - Present | MORGAN STANLEY PRIVATE BANK, NATIONAL ASSOCIATION | NEW YORK, NY |
| 06/2009 - Present | MORGAN STANLEY SMITH BARNEY | BOSTON, MA |
| 11/2005 - Present | CITIGROUP GLOBAL MARKETS INC. | BOSTON, MA |

## OTHER BUSINESS ACTIVITIES

This section includes information, if any, as provided by the Investment Adviser Representative regarding other business activities the Investment Adviser Representative is currently engaged in either as a proprietor, partner, officer, director, employee, trustee, agent, or otherwise. This section does not include non-investment related activity that is exclusively charitable, civic, religious, or fraternal and is recognized as tax exempt.

No information reported.

©2018 FINRA. All rights reserved. Report# 49128-72070 requested on Thursday, October 11, 2018 about BRIAN FRANCIS MILLER.



www.adviserinfo.sec.gov

# End of Report

This page is intentionally left blank.

©2018 FINRA. All rights reserved. Report# 49128-72070 requested on Thursday, October 11, 2018 about BRIAN FRANCIS MILLER.

| CIVIL ACTION COVER SHEET | DOCKET NUMBER | Trial Court of Massachusetts<br>The Superior Court |
|---|---|---|

| | | COUNTY |
|---|---|---|
| PLAINTIFF(S): Feeney Brothers Excavation LLC | | Suffolk |
| ADDRESS: and Feeney Brothers Excavation Corporation 401(k) Plan | | |

DEFENDANT(S): Morgan Stanley & Co., LLC, Morgan Stanley Private Bank, N.A.,

Morgan Stanley Smith Barney LLC and Brian F. Miller

ATTORNEY: M. Patrick Moore, Esq./Donna A. Mizrahi, Esq.

ADDRESS: . Hemenway & Barnes LLP, 75 State Street

Boston, MA 02109

ADDRESS:

BBO: 670323/678412

## TYPE OF ACTION AND TRACK DESIGNATION (see reverse side)

| CODE NO. | TYPE OF ACTION (specify) | TRACK | HAS A JURY CLAIM BEEN MADE? |
|---|---|---|---|
| ~~A99~~/B99 | ~~Contract/Business Action/~~Tortious Action | F | ☒ YES  ☐ NO |

*If "Other" please describe: Negligent misrepresentation; fraudulent inducement; G.L. c. 93A

## STATEMENT OF DAMAGES PURSUANT TO G.L. c. 212, § 3A

The following is a full, itemized and detailed statement of the facts on which the undersigned plaintiff or plaintiff counsel relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

### TORT CLAIMS
(attach additional sheets as necessary)

A. Documented medical expenses to date:
    1. Total hospital expenses ....................................................................................... $ _____
    2. Total doctor expenses ......................................................................................... $ _____
    3. Total chiropractic expenses ................................................................................ $ _____
    4. Total physical therapy expenses ........................................................................ $ _____
    5. Total other expenses (describe below) ............................................................... $ _____
                                                                    Subtotal (A): $ _____

B. Documented lost wages and compensation to date ............................................................. $ _____
C. Documented property damages to dated ............................................................................ $ _____
D. Reasonably anticipated future medical and hospital expenses ........................................... $ _____
E. Reasonably anticipated lost wages .................................................................................... $ _____
F. Other documented items of damages (describe below) ....................................................... $ _____

G. Briefly describe plaintiff's injury, including the nature and extent of injury:

TOTAL (A-F):$ _____

### CONTRACT CLAIMS
(attach additional sheets as necessary)

Provide a detailed description of claims(s):

Contract/Tort Combined TOTAL: $ 1 Million+

Signature of Attorney/Pro Se Plaintiff: X *Donna A. Mizrahi*    Date: 10/12/2018

RELATED ACTIONS: Please provide the case number, case name, and county of any related actions pending in the Superior Court.

### CERTIFICATION PURSUANT TO SJC RULE 1:18

I hereby certify that I have complied with requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods of dispute resolution. ...

Signature of Attorney of Record: X *Donna A. Mizrahi*    Date: 10/12/2018

| CIVIL TRACKING ORDER<br>(STANDING ORDER 1- 88) | DOCKET NUMBER<br>1884CV03183 | Trial Court of Massachusetts<br>The Superior Court |
|---|---|---|
| **CASE NAME:**<br>Feeney Brothers Excavation LLC et al vs. Morgan Stanley & Co LLC et al | | Michael Joseph Donovan, Clerk of Court |
| **TO:**<br>, | | **COURT NAME & ADDRESS**<br>Suffolk County Superior Court - Civil<br>Suffolk County Courthouse, 12th Floor<br>Three Pemberton Square<br>Boston, MA 02108 |

## TRACKING ORDER - F - Fast Track

You are hereby notified that this case is on the track referenced above as per Superior Court Standing Order 1-88. The order requires that the various stages of litigation described below must be completed not later than the deadlines indicated.

### STAGES OF LITIGATION                           DEADLINE

| | SERVED BY | FILED BY | HEARD BY |
|---|---|---|---|
| Service of process made and return filed with the Court | | 01/10/2019 | |
| Response to the complaint filed (also see MRCP 12) | | 02/11/2019 | |
| All motions under MRCP 12, 19, and 20 | 02/11/2019 | 03/11/2019 | 04/10/2019 |
| All motions under MRCP 15 | 02/11/2019 | 03/11/2019 | 04/10/2019 |
| All discovery requests **and depositions** served and non-expert depositions completed | 08/08/2019 | | |
| All motions under MRCP 56 | 09/09/2019 | 10/07/2019 | |
| Final pre-trial conference held and/or firm trial date set | | | 02/04/2020 |
| Case shall be resolved and judgment shall issue by | | | 10/12/2020 |

The final pre-trial deadline is **not the scheduled date of the conference**. You will be notified of that date at a later time.

**Counsel for plaintiff must serve this tracking order on defendant before the deadline for filing return of service.**

This case is assigned to

| DATE ISSUED<br>10/12/2018 | ASSISTANT CLERK<br>Jane M Mahon | PHONE<br>(617)788-8110 |
|---|---|---|

Date/Time Printed: 10-12-2018 12:24:37                                   SCV026\ 08/2018